Larry **FLETCHER**, Appellant,

v.

Louie L. **WAINWRIGHT**, Director, Division of Corrections, State of Florida, Appellee,

James **FLETCHER**, Appellant,

v.

Louie L. **WAINWRIGHT**, Director, Division of Corrections, State of Florida, Appellee.

Nos. 25405, 25406.

United States Court of Appeals Fifth Circuit.

Aug. 2, 1968.

Rehearing Denied Sept. 6, 1968.

Larry Fletcher, pro se.

James Fletcher, pro se.

Arden M. Siegendorf, Asst. Atty. Gen., Miami, Fla., for appellee.

Before GEWIN and THORNBERRY, Circuit Judges, and EDENFIELD, District Judge.

THORNBERRY, Circuit Judge:

These are consolidated appeals by two brothers, Florida state prisoners, from the denial of their petitions for habeas corpus. They were convicted by a jury of breaking and entering a building to commit grand larceny and grand larceny. Direct appeal and subsequent post-conviction efforts in state courts proved unsuccessful.

■ Though the district court passed on the constitutional errors alleged by appellants, it also ruled that James Fletcher was not entitled to habeas relief because a detainer was outstanding against him relative to convictions in Illinois. The district court stated in its order, appellant urges in his brief, and the State does not deny that James Fletcher is presently serving his Florida sentence in Florida prison; yet the court held there was no right to habeas relief because even if he were successful in Florida he would not be released from confinement but would be returned to state prison in Illinois. The effect of foreclosing a habeas attack on the Florida sentence while it is being served is to foreclose such an attack altogether. This was not the meaning of McNally v.

Hill, 1934, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238.[1]

As indicated by the Supreme Court's opinion in Walker v. Wainwright, 1968, 390 U.S. 335, 88 S.Ct. 962, 19 L.Ed.2d 1215; McNally v. Hill meant only that a prisoner could not employ federal habeas corpus to attack a sentence which he had not begun to serve. In *Walker* the district court did not allow the prisoner to attack a life sentence he was presently serving because even if successful he would not have been released but would have begun to serve a five-year sentence. The language used by the Court to explain that habeas was indeed available is controlling here:

> Whatever its other functions the great and central office of the writ of habeas corpus is to test the legality of a prisoner's current detention. The petitioner is now serving a life sentence imposed pursuant to a conviction for murder. If, as he contends, that conviction was obtained in violation of the Constitution, then his confinement is unlawful. It is immaterial that another prison term might still await him even if he should successfully establish the unconstitutionality of his present imprisonment.

■ It being clear that both Fletchers are entitled to habeas relief if their constitutional arguments prevail, we proceed to their primary contention, which is that certain pieces of jewelry obtained as a result of an unlawful entry into James Fletcher's motel room should not have been admitted in evidence at the trial. The relevant facts are that on November 27, 1962 a Miami police officer began cruising in search of a red 1963 Chevrolet reportedly involved *in a window-smashing incident at the Fontainebleau Hotel.* He spotted such a car at a motel and was observing it when the doorman at the Fontainebleau who had reported the incident ar-

rived and said he did not believe the car under observation was the one involved in the window smashing. Nevertheless, the officer who first spotted the car and a second officer together with the doorman went to the room believed to be occupied by the owner of the automobile. The officers' conceded purpose in going to the room was to interview the occupants about the car in the parking lot. They had neither arrest warrant, search warrant nor probable cause to arrest— they did not intend to make an arrest.

When the first officer knocked on the door and identified himself, one of the occupants replied, "Just a minute." The officer then heard what sounded like a suitcase opening or closing. He knocked again and again received the answer, "Just a minute, Officer." A third knock having produced no response, he began kicking the door down. By this time, the second policeman had gone to the rear of the hotel. When the one at the door finally got in the room, appellants had escaped through a window. They were apprehended shortly and jewelry stolen from the Fontainebleau was found on the ground below the window. It had been thrown out the window when the officer began kicking down the door.

Although the facts were obviously insufficient to constitute probable cause to enter the room, the district court held that the state court correctly refused to suppress the admission of the jewelry. This holding was predicated on the belief that there can be no violation of the fourth amendment unless there is an illegal search and seizure within a constitutionally protected area. Since the motel ground was not considered a constitutionally protected area, it was deemed irrelevant that the entry into the room was illegal. The case of Marullo v. United States, 5th Cir. 1964, 328 F.2d 361 was cited in support of this holding. There the authorities found stolen money orders under the suspect's rented cab-

1. McNally v. Hill has been overruled by Peyton v. Rowe, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (May 20, 1968). We find it unnecessary to analyze Peyton v. Rowe as it affects this case since the earlier case of Walker v. Wainwright is precisely in point.

in. Although they lacked probable cause to search, the Court upheld the seizure.

> A private home is quite different from a place of business or from a motel cabin. A home owner or tenant has the exclusive enjoyment of his home, his garage, his barn or other buildings, and also the area under his home. But a transient occupant of a motel must share corridors, sidewalks, yards and trees with the other occupants. Granted that a tenant has standing to protect the room he occupies, there is nevertheless an element of public or shared property in the motel surroundings that is entirely lacking in the enjoyment of one's home.

328 F.2d at 363.

On motion for rehearing the Court emphasized that since it had held the location of the evidence not within the protection of the fourth amendment, "the reasonableness of the search is not a relevant constitutional consideration," 330 F.2d at 609. Closer scrutiny of *Marullo* reveals that the district judge in the instant case extended its application unduly. *Marullo* concerns the somewhat fictional question of where the "curtilage" begins and ends. See State of Texas v. Gonzales, 5th Cir. 1968, 388 F.2d 145, 147. The concept of the "curtilage" sets the fourth-amendment boundaries that the authorities may not invade without probable cause. All *Marullo* teaches is that if one chooses to hide evidence in an area that has an "element of public or shared property" about it, he cannot expect the same protection that would attach if the item had been hidden in his home. It presents no relevant considerations that aid in solving a situation where after an unconstitutional invasion of a protected area an item of evidence is hurled out of the window as a direct reaction to the illegal conduct. Several courts have considered this situation and have uniformly held that the initial illegality tainted the seizure of the evidence since the throwing was the direct consequence of the illegal entry. See Commonwealth of Massachusetts v. Painten, 1st Cir. 1966, 368 F.2d 142; United States v. Merritt, 3d Cir. 1961, 293 F.2d 742; Hobson v. United States, 8th Cir. 1955, 226 F.2d 890; United States v. Blank, N.D. Ohio 1966, 251 F.Supp. 166. In such a situation it cannot be said that there was a "voluntary abandonment" of the evidence. See Commonwealth of Massachusetts v. Painten, supra at 144. The only courts that have allowed the seizure of evidence that was thrown out the window have emphasized that "no improper or unlawful act was committed by any of the officers" prior to the evidence being tossed out the window. See Cutchlow v. United States, 9th Cir. 1962, 301 F.2d 295, 297.

Further, the fact that the officer who discovered the evidence in this case had circled the building is not sufficient to constitute an "independent source" and thereby remove the initial illegality. He did not leave the door to appellant's room until his companion was about to force an entry and his express purpose was to thwart any attempted escape. Therefore, the nexus between the lawless conduct and the discovery of the challenged evidence did not "become so attenuated as to dissipate the taint." See Wong Sun v. United States, 1963, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441.

These considerations demonstrate that in this case whether appellant had a proprietary interest in the area where the evidence was seized is irrelevant. Indeed, the proprietary-interest approach has been criticized generally because it clouds the issues of privacy and public security that should be the focal point of fourth-amendment adjudication. See Warden, Maryland Penitentiary v. Hayden, 1967, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782; State of Texas v. Gonzales, supra at 148. Therefore, since the initial entry was improper and the items were thrown out the window as a direct result of that illegality, the police were not entitled to the fruits and the admission of the jewelry in evidence was reversible error. To hold otherwise would

abort the deterrent policy behind the exclusionary rule.

The judgment of the district court is reversed and the case remanded for the issuance of a writ of habeas corpus unless the State elects to retry appellants within a reasonable time.

Reversed and remanded with directions.