The UNITED STATES, Appellee,

v.

Michael BAZINET, Appellant.

The UNITED STATES, Appellee,

v.

George KNOX, Appellant.

Nos. 71–1411, 71–1412.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 14, 1972.

Decided June 29, 1972.

Rehearing Denied in No. 71–1412
July 25, 1972.

Lenore Miller, Minneapolis, Minn., for Bazinet.

Jack S. Nordby, St. Paul, Minn., for Knox.

Earl Cudd, Asst. U. S. Atty., Robert G. Renner, U. S. Atty., D.Minn., Minneapolis, Minn., for appellee.

Before BREITENSTEIN,* Senior Circuit Judge, and HEANEY and STEPHENSON, Circuit Judges.

HEANEY, Circuit Judge.

Michael Bazinet and George Knox[1] were jointly tried and convicted of conspiracy to rob a federally insured bank in violation of 18 U.S.C. §§ 371 and 2113(a).

The defendants were arrested on December 4, 1970, at approximately 9:50 a. m. as the result of a police "stake-out" at Knox's grandmother's house. The officers had been sent by their superior officer, Captain Graff, to arrest Knox on sight for illegal dynamite trafficking. The police had no warrant and had not applied for one.

The stake-out officers observed a Volkswagen van drive up to Knox's grandmother's house. Michael Bazinet, unknown to the police at the time, was driving. The van belonged to his wife. Sarah Shosie, listed in the indictment as a co-conspirator, was seated in the front passenger seat and Knox was seated in the rear passenger seat. Knox exited from the vehicle and entered the house. About five minutes later, he returned to the VW van carrying a paper bag and resumed his place in the rear seat. The VW drove off, followed by the police. After several blocks, the police turned on their red lights and siren. As they did so, Knox bent down as if placing something on the floor.

When the van came to a halt, all three passengers were arrested. Knox was placed in the rear seat of the squad car; Bazinet and Shosie remained standing on the sidewalk. The police seized the paper bag from the rear passenger seat where it had been sitting next to Knox. Inside the bag they found leg irons, handcuffs, a knife, adhesive tape, a gas canister, and a homemade silencer which looked like a small detonating device. The police found a cigarette lighter shaped like a small pistol in Knox's pocket.

Captain Graff was called to the scene and arrived within a half hour of the arrests. Upon being informed of the contents of the paper bag, Graff read Bazinet his Miranda rights. He then requested and received Bazinet's permission to search the van. Graff testified that he was looking for explosives. He found none. He did, however, notice some notebooks and papers, which he did not seize, between the front bucket seats.

All three arrestees were taken to police headquarters. The van was impounded and towed to the police garage. Sometime later that afternoon, the police received information[2] that the arrest

* Senior Circuit Judge, Tenth Judicial Circuit, sitting by special designation.

1. Bazinet and Knox have incorporated one another's briefs and arguments. In some instances, however, it is apparent that the issue relates only to Bazinet, and in those instances the issue will be discussed only in terms of him.

2. In its memorandum, the trial court stated that this information came from Sarah

had interrupted the defendants in their preparation for a bank robbery, which was to occur later in the afternoon, and that the notebooks and papers were diagrams, maps and plans for the robbery. Two police officers secured Bazinet's consent to again search the VW. It is undisputed that Bazinet was not told, at any time, that he had a right to refuse consent.

The notebooks and papers were seized from the impounded van without a warrant[3] and were introduced at trial against both defendants, over their objections that these items were the fruits of an illegal search and seizure.

At trial, the government's evidence tended to show that a scheme was devised whereby a teller at a bank, Susan Westman, agreed to participate in a robbery of the bank. The robbery was apparently for the purpose of getting funds to support the activities of a politically radical "urban guerilla" group. The robbery was to be accomplished by Shosie, who would drive to the bank's auto teller window and demand that Westman give her money. Shosie would display a mock-up explosive device and give Westman a note stating that the device would be exploded if she did not cooperate. These precautions were taken in order to prevent suspicion from focusing on Westman. The plan was advanced primarily by George Knox, and it was he who was the most active member of the conspiracy. In addition to Westman and Shosie, two young men were approached by Knox about contributing to the conspiracy by stealing a car for

Shosie to use in the robbery, and by undertaking an unspecified task. There was testimony from one of these young men that Bazinet had been along and had also urged him to steal the car.

Further facts, as required, will be developed in our discussion of each issue raised by the defendants.

I

The defendants contend that the trial court improperly denied their motion to suppress the evidence seized from the van, both at the time of the arrest and later, when it was parked in the police garage.

First, they argue that the evidence found in the paper bag was seized incident to an illegal arrest. They contend that the arrests were illegal because the police made no attempt to secure warrants even though they had ample opportunity to do so. They assert that this objection is good whether or not the police had probable cause to make the arrests.

■■ The legality of an arrest is to be determined according to state law, consistent with constitutional requirements. Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948); United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210, (1948). Under Minnesota law, a warrantless arrest is authorized if there is probable cause to believe that a crime has been committed and that the person arrested has committed it. Minn.Stat. § 629.34(3). Since a warrantless arrest is authorized, we must decide whether or

Shosie. The court found that the police had probable cause to search the van at the police station, based on Shosie's statement, even assuming that Bazinet's consent was invalid. However, there is no testimony in the record that the police got this information from Shosie. The prosecutor stated this to be the fact in closing argument at the suppression hearing. He later wrote a letter to the court making the same statement and offering to prove it by affidavit. This suggestion was vigorously resisted by the defendants. We find no affidavits in the record before

us substantiating the prosecutor's statement. In the absence of sworn testimony, it was improper for the court to find that Shosie was the source of this information, particularly where Shosie was then found to have provided probable cause for the second search.

3. In the absence of consent, this search, in our view, would be illegal under Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); Kaufman v. United States, 453 F.2d 798 (8th Cir. 1971).

not the Minnesota standard violates the Constitution.

■ The defendants rely upon Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), for the proposition that warrantless arrests violate the Fourth Amendment in the absence of any exigency excusing the police from securing a warrant. We do not agree that *Coolidge* supports this view. In *Coolidge,* the Supreme Court dealt with a warrantless entry into a person's dwelling place for purposes of making an arrest. A distinction has traditionally been drawn between warrantless arrests, searches, and seizures occurring within an individual's dwelling place, and those occurring in a public place. See, Ford v. United States, 122 U.S.App.D.C. 259, 352 F.2d 927 (1965). While this distinction was recently challenged in argument before the Supreme Court, 10 Cr.L. 4136 (1972), the law of this Circuit continues to be that

> "* * * [an] arrest in a public place based on probable cause and [a] subsequent search [incident thereto is] not an unreasonable search and seizure in violation of the * * * Fourth Amendment * * *. An arrest warrant is not required even though there may be time to obtain one when the ensuing arrest is based upon probable cause. The test is one of probable cause for the arrest. * * *"

Lee v. United States, 363 F.2d 469, 473 (8th Cir.), cert. denied, 385 U.S. 947, 87 S.Ct. 323, 17 L.Ed.2d 227 (1966). See, United States of America v. Wixom et al., 460 F.2d 206 (8th Cir., 1972); Ford v. United States, *supra. Coolidge* does not change this rule.

The defendants next contend that the police did not have probable cause to arrest. The trial court ruled that there was probable cause to arrest both Bazinet and Knox, and we give great weight to that determination. We agree that the police had probable cause to arrest Knox, but we do not agree that they had probable cause to arrest Bazinet.

At the time he gave the order for Knox's arrest, Officer Graff had the following information:

(1) the old Federal Building in Minneapolis had been dynamited and two young men with long hair, but otherwise average in appearance, were suspects;

(2) the Sheriff of Jackson County, Wisconsin, had advised Minneapolis police by letter that a young man had been in the Black River Falls, Wisconsin, area attempting to buy dynamite;

(3) a gas station attendant and a person who had been approached to sell dynamite identified photographs of George Knox as the young man who had attempted to buy dynamite;

(4) the young man had left a phone number to be called by prospective sellers of dynamite, and the phone number was listed to George Knox's father;

(5) the young man had been driving a Cadillac automobile which, according to state motor vehicle department records, was the car used by George Knox;

(6) dynamite had been stolen from Jackson County, Wisconsin, at approximately the time the individual identified as Knox had attempted to buy dynamite there;

(7) approximately five hundred pounds of dynamite had been recovered from the trunk of the Cadillac automobile used by Knox as it was parked on a South Minneapolis street.

■ Knox contends that probable cause for his arrest was lacking because the identity and reliability of the informants were not established. We disagree with Knox, and hold that there was probable cause for his arrest.

This case is similar to United States v. Wahlquist, 438 F.2d 219 (8th Cir.), cert. denied, 402 U.S. 1010, 91 S.Ct. 2195, 29 L.Ed.2d 432 (1971), in which this Court stated:

> " * * * the interlocking nature of the specific and detailed information

discovered during the investigation, which was either verified by personal observation or corroborated by duplicate information from an independent source, buttressed the reliability of each informant so as to give the arresting officers reasonable cause to believe that appellant was involved in the bank robbery. * * * "
438 F.2d at 222.

See, United States v. Morris, 445 F.2d 1233 (8th Cir.), cert. denied, 404 U.S. 957, 92 S.Ct. 322, 30 L.Ed.2d 273 (1971). Here, the information supplied by the informants was corroborated by independent sources. The fact that the telephone number left by the young man was listed to Knox's father corroborated the fact that it was Knox who attempted to buy dynamite. The photo identifications of Knox were corroborated by the fact that the car used by the young man was found to be the car used by Knox. The suspicion that it was Knox who stole the dynamite from Wisconsin at the time Knox was seen there was corroborated by the fact that some of Captain Graff's men had recovered approximately five hundred pounds of dynamite in Knox's car. This information, taken as a whole, provided probable cause for Knox's arrest.[4]

■ We conclude, on the contrary, that there was not probable cause for Bazinet's arrest. Captain Graff admitted at the hearing on the motion to suppress that he had no information whatever to connect Bazinet with the commission of any crime, other than the fact that an officer who accompanied Graff to the scene recognized Bazinet as a convicted felon. Furthermore, Graff testified that the major reason he arrested Bazinet was Knox's presence in Bazinet's car. The government argues that the contents of the paper bag gave probable cause to believe that all three occupants of the VW were engaged in illegal conduct. If this reason ever gave probable cause with respect to Bazinet, it was dissipated when Graff searched the van initially and found no additional evidence of criminal activity on Bazinet's part.

In our view, Bazinet's arrest was illegal under United States v. Di Re, supra, whose relevant facts closely parallel those before us. In Di Re, the police had information from a reliable informant, Reed, that one Buttitta was going to sell him some counterfeit gasoline ration coupons. They had no such information with respect to Di Re. When the police arrived at the location where the sale was to occur, they found Reed, Buttitta, and Di Re in a car. They arrested all three, and in searching Di Re they discovered counterfeit gasoline ration coupons in his pocket. A later search at the police station revealed additional coupons on Di Re's person. The government attempted to justify the search of Di Re as incident to a lawful arrest.

The Supreme Court found that there was not probable cause for Di Re's arrest on the basis, that in the absence of other information tending to establish his culpability, his mere presence in the car with Buttitta and Reed did not warrant the inference that he was engaged in criminal activity. The Court stated:

" * * * The argument that one who 'accompanies a criminal to a crime rendezvous' cannot be assumed to be a bystander * * * is far-fetched when the meeting is not secretive or in a suspicious hide-out but in

---

4. On this view of the evidence, the contents of the paper bag were clearly seizable incident to Knox's arrest. An argument could be made that, on the basis of Coolidge v. New Hampshire, supra, the subsequent search of the van was invalid as to Knox and that the evidence should have been inadmissible against him. See, Kaufman v. United States, supra. We do not determine the admissibility of this evidence with respect to Knox, however. The government's case against Knox was strong, and any error in admitting the evidence would have been harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L. Ed.2d 705 (1967).

broad daylight, in plain sight of passersby, in a public street of a large city, and where the alleged substantive crime is one which does not necessarily involve any act visibly criminal. If Di Re had witnessed the passing of papers from hand to hand, it would not follow that he knew they were ration coupons, and if he saw that they were ration coupons, it would not follow that he would know them to be counterfeit. * * * "

United States v. Di Re, *supra*, 332 U.S. at 593, 68 S.Ct. at 228.

If anything, there is less reason to justify Bazinet's arrest than there was to support Di Re's. First, in *Di Re*, there was reason to suspect, and the Supreme Court assumed for purposes of argument, that Di Re was present when the actual criminal transfer occurred. On our record, there was no act, criminal in itself, committed by Knox in Bazinet's presence. Second, the Supreme Court held that Di Re would not necessarily know that the coupons were counterfeit even if he had seen them. In our case, the evidence merely showed that Knox was carrying a paper bag; there is no evidence that Bazinet could see, or knew, the contents of that bag, let alone that he would know that the contents were criminal if he had seen them. Third, Knox had carried the bag from the house while the police observed him.[5] The bag was found next to him on the seat and there was no creditable evidence of any reason for the police to suspect that Bazinet had any association with the bag or exercised any control over it, except for his presence in the same car. The bag was clearly Knox's.

Fourth, the occurrences here took place under circumstances similar to those in *Di Re*, in that the meeting was "not secretive or in a suspicious hide-out but in broad daylight, in plain sight of passersby, in a public street of a large city". Fifth, as in *Di Re*, the police had no information regarding Bazinet's present involvement in any crime, but arrested him because of his presence in the car with Knox, who was carrying, in a concealed fashion, items suggestive of criminal activity on his part. This is not enough to justify Bazinet's arrest.

Bazinet argues that if his arrest was illegal, the subsequent search of the van at the police station was also illegal, and that the evidence seized at that time was inadmissible against him. His position is that any consent obtained after an illegal arrest is *per se* invalid. The trial court apparently adopted that view.[6] The government, on the other hand, appears to take the position that, since there was a consent in fact, the inquiry did not have to go to the question of whether or not that consent was valid.

■■■ Neither of these positions is correct. We know of no cases holding that any consent given after an illegal arrest is per se invalid. See, Phelper v. Decker, 401 F.2d 232, 237 (5th Cir. 1968). On the other hand, the mere fact that a person has been arrested in violation of his constitutional rights casts grave doubt upon the voluntariness of a subsequent consent. The government has a heavy burden of proof in establishing that the consent was the voluntary act of the arrestee and that it was not the fruit of the illegal arrest.[7]

---

5. There was some evidence in the record that Knox had also carried the bag into the house. But the trial court, in its memorandum, stated only that Knox went in the house and came out carrying the bag. The government has apparently accepted this version of the facts. While a slightly stronger case could be made that Bazinet knew the contents of the bag if it had in fact been in the car before Knox went into the house, there is still no evidence showing that Bazinet had any control over or knowledge of its contents.

6. In denying the motion to suppress, the trial court stated:
   "Thus, assuming *arguendo* that Bazinet's arrest was illegal, and *that his consent to search was therefore ineffective* as fruit of that illegality, the police had independent justification for that search in Sarah Shosie's confession. * * * "
   (Emphasis added.)

7. As we understand the record, this question was not decided. In its memorandum, the trial court states that "[p]olice testi-

Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 41 (1963). "[C]onsent to a search is not to be lightly inferred, but should be shown by clear and convincing evidence." Phelper v. Decker, *supra*, 401 F.2d at 236, and cases cited therein. Many factors must be considered in determining whether a consent is voluntary rather than the fruit of an illegal arrest. Among them are:

(1) the elapsed time between the illegal arrest and the procurement of the consent; and

(2) occurrences intervening between the illegal arrest and the giving of the consent, such as consultation with an attorney, warning of constitutional rights, or prolonged interrogation. See, Phelper v. Decker, *supra*.

The record before us is not adequate in these respects to permit a judgment on the question of whether or not Bazinet's consent was the fruit of his illegal arrest. While it is clear that he was read Miranda warnings and that he was not informed of his right to refuse consent,[8] there is no evidence whether or not he was interrogated, whether or not he consulted with an attorney, or how long he was held prior to giving his consent.

A determination must be made whether Bazinet's consent was the fruit of an illegal arrest. If it was, admission of the evidence seized pursuant to the consent would be error and, in view of the government's case, we cannot say that this error would be harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed. 2d 705 (1967).

Shosie linked Bazinet to the plot, but she was impeached by two other government witnesses on pertinent points. Braddock testified that Bazinet was one of two men who offered him $100 to steal a car; but his testimony was weakened on cross-examination. Backstrom denied that Bazinet had even been present when Knox asked him to take part in the conspiracy. Finally, Westman testified that Bazinet was around during the major planning session on the night before the robbery; but she stated that he was in and out, and she was not certain if he was there during all of the conversation. He took no part in that conversation and Westman testified that her only conversation with him was social conversation in the kitchen.

Under these circumstances, the introduction of the evidence seized from the VW at the police garage could easily have prejudiced the jury against Bazinet. The contents of the notebook were very inflammatory, and the mere ideas stated therein would influence the jury against Bazinet. Furthermore, even though the notebook clearly did not belong to Bazinet, the location in which it was found—in Bazinet's car and next to his bucket seat—would easily lead the jury to believe that he knew the notebook's contents and subscribed to those views, even though such a belief would be founded upon totally circumstantial evidence.

Therefore, a hearing must be held on remand to determine whether or not

fied that he freely consented [to the search of the impounded van], and the defendants have not disputed that assertion of consent." We do not understand this as a finding that Bazinet's consent was voluntary. Rather, we believe that the trial court was simply asserting that consent had, in fact, been given. Since the trial court apparently adopted the defendants' position of per se invalidity of a consent following an illegal arrest, see n. 5, supra, the only question considered by the parties was whether or not the arrest was legal. We believe that the defendant

merely did not dispute the fact that he had consented. Furthermore, we do not believe the court would have made a finding of voluntariness on the evidence in this record, since it is insufficient to show that the consent was not the fruit of an illegal arrest, in view of the high standard of proof which the government must meet.

8. See, Schoepflin v. United States, 391 F. 2d 390 (9th Cir.), cert. denied, 393 U.S. 865, 89 S.Ct. 146, 21 L.Ed.2d 133 (1968); United States v. Menke, 339 F.Supp. 1023 (W.D.Pa.1972).

Bazinet's consent to the police station search of the van was the fruit of an illegal arrest. If it was, his conviction must be reversed and he must be retried. If it was not, his conviction must be affirmed.

II

The defendants contend that there was a fatal variance between the indictment and the government's proof in that the indictment charged a conspiracy to violate 18 U.S.C. § 2113(a) and the evidence showed, at most, a conspiracy to commit embezzlement. They also contend that it was error for the trial court to instruct the jury that it could convict for conspiracy to violate 18 U.S.C. § 2113(b) as a lesser included offense of § 2113(a).

We have reviewed the District Court's determination on these questions and, for the reasons stated in its opinion, we affirm on these issues.

III

Bazinet contends that the evidence is legally insufficient to show that he willfully became a member of the conspiracy and that his conviction cannot, therefore, be sustained.

On challenges to the sufficiency of the evidence, we must view the evidence in the light most favorable to the verdict. United States v. Skillman, 442 F.2d 542 (8th Cir.), cert. denied, 404 U.S. 833, 92 S.Ct. 82, 30 L.Ed.2d 63 (1971). Applying that standard in this case, we conclude that the evidence was sufficient to sustain the conviction. If the jury believed the government's witnesses Shosie and Braddock, there was sufficient evidence that Bazinet was knowingly involved in the conspiracy and that he undertook certain actions in willful furtherance thereof. See, United States v. Mechanic, 454 F.2d 849 (8th Cir. 1971), cert. denied, 406 U.S. 929, 92 S.Ct. 1765, 32 L.Ed.2d 131 (1972); United States v. White, 451 F.2d 351 (8th Cir. 1971).

The defendants' argument that there was no proof of an overt act in furtherance of the conspiracy may be met on the same basis. If the jury believed Shosie, her testimony alone would have been sufficient to prove the first overt act—that the conspirators had driven the route to and from the bank to make sure that they knew the route and to check things out otherwise. In our view, the second overt act—that one of the conspirators had arranged to have a car stolen and delivered to the rear of Shosie's building—was sufficiently proven by circumstantial evidence.

IV

Bazinet argues that the trial court should have granted a mistrial because (1) Knox was referred to as a political radical, (2) the prosecutor elicited an allusion to Knox's politically radical philosophy, and (3) the notebook, written by George Knox and containing highly inflammatory ideas, was introduced over the defendants' objections.

We have examined the record and we conclude that there is no merit to (1) and (2). The court sustained the objection to (1) and gave cautionary instructions to the jury to disregard the comment. There was no objection to (2). In addition, the allusion in (2) was innocuous and was related to the motivation for the robbery.

With respect to (3), we do not agree that the notebook was so prejudicial as to require a mistrial, assuming that it was admissible against Bazinet under section I of this opinion. It was relevant to prove the conspiracy and the theory on which the bank robbery had been planned. Furthermore, once the conspiracy was proven, the notebook would have been admissible against Bazinet as a member of the conspiracy. Hanger v. United States, 398 F.2d 91 (8th Cir. 1968), cert. denied, 393 U.S. 1119, 89 S.Ct. 995, 22 L.Ed.2d 124 (1969).

## V

Bazinet contends that the trial court erred in denying his motion for severance. In addition to the allegations made in the preceding section, Bazinet argued to the District Court that severance should have been granted because Knox had a criminal record, was under surveillance for dynamite trafficking, and was the dominant member of the conspiracy.

Granting of a severance is committed to the discretion of the trial judge and his ruling will rarely be disturbed on review. United States v. Skillman, *supra*. In order to gain a reversal, the defendant must affirmatively show that prejudice resulted from the failure to grant separate trials. United States v. McKuin, 434 F.2d 391 (8th Cir. 1970), cert. denied, 401 U.S. 911, 91 S.Ct. 875, 27 L. Ed.2d 810 (1971).

No such showing has been made here. Aside from the general allegation that Bazinet was prejudiced by the joint trial, there is no argument demonstrating the manner in which joinder prejudiced him. The defendant must do more than allege that acquittal would have been more likely had he been tried separately. See, United States v. Skillman, *supra*.

## VI

Bazinet finally argues that his trial was unfair and amounted to a denial of due process of law. He also contends that he was prejudiced by a witness's reference to a "mug shot" of him. Both defendants allege that it was error for the trial court to admit hearsay evidence on the question of probable cause and to allow Graff to testify regarding the contents of the letter from the Jackson County Sheriff, rather than having the government produce the letter. We are satisfied that these questions were properly decided by the trial court.

After the appeal had been argued and submitted to this Court, Knox sent a letter in which he attempted to raise additional issues. We conclude that these issues were not raised before the trial court, there there is no support in the record for them, and that they are without merit.

The conviction of George Knox is affirmed. The case is remanded to the District Court for further proceedings consistent with this opinion.