**UNITED STATES of America, Plaintiff-Appellee,**

v.

**King David PRESTON, alias King X. Preston, Defendant-Appellant.**

**No. 71–1605.**

United States Court of Appeals, Seventh Circuit.

Argued April 19, 1972.

Decided June 8, 1972.

Certiorari Denied Oct. 10, 1972.
See 93 S.Ct. 209.

Timothy W. Woods, South Bend, Ind., for defendant-appellant.

William C. Lee, U. S. Atty., John R. Wilks, Asst. U. S. Atty., Fort Wayne, Ind., for plaintiff-appellee.

Before DUFFY and MURRAH,* Senior Circuit Judges, and JUERGENS, * * District Judge.

DUFFY, Senior Circuit Judge.

Defendant Preston was indicted for passing a counterfeit $20 Federal Reserve Note in Michigan City, Indiana, on February 10, 1970[1] After a trial by jury, he was found guilty and was sentenced to imprisonment for a term of five years.

On February 10, 1970, Preston stopped at a Shell Service Station in Indianapolis, Indiana. Preston asked directions to Michigan City, Indiana. After purchasing oil and gasoline, de-

---

* Senior Circuit Judge Alfred P. Murrah of the Tenth Circuit is sitting by designation.

** Chief District Judge William G. Juergens of the Eastern District of Illinois is sitting by designation.

1. 18 U.S.C. § 472.

fendant paid the station attendant Martin with a $20 Federal Reserve Note. Martin refused to accept it claiming it was counterfeit and told Preston that the bill was "just a piece of paper." [2]

Defendant told Martin he knew where he obtained the note and offered Martin to retain his watch as security until he returned with legitimate currency. Martin returned the counterfeit bill and Preston left the station.

Martin thus alerted to the attempted passing of a counterfeit note, promptly contacted the United States Secret Service with respect to this incident. The Secret Service advised Martin to summon the police in the event that the same man returned.

On the evening of the same day, Preston met one Brooks at the latter's home in Michigan City, Indiana. At midnight they drove with one other person to Owen's Gas Station and ordered $2 worth of gasoline from the attendant, Covert. From the evidence adduced at trial Preston, seated in the right front passenger's seat, paid for the purchase with a folded $20 Federal Reserve Note which note served as the basis for the indictment. Covert returned the change on the driver's side of the car and the car pulled away from the service station. Upon unfolding the bill, Covert noted that it did not appear to be authentic. He yelled to the occupants of the car to stop but his efforts went unheeded. The attendant made a note of the license number of the car and the Michigan City police were alerted.

The following morning, February 11, 1970, Preston returned to the Shell Station in Indianapolis at six o'clock apparently to retrieve his watch. Preston informed attendant Martin that he had traveled 300 miles for his watch. Martin, of course, was alerted to the possibility that Preston might return and

stalled for time. He informed Preston the watch was not on the premises but would be returned to Preston personally in the afternoon. Preston offered to pay immediately and have another pick up his watch. Martin refused and pushed the hold-up button to summon the police.

When the local police officers arrived, Martin was brandishing a baseball bat holding Preston at bay. Neither officer was aware of the prior transaction at the station, therefore one officer asked Preston to take sanctuary in the police car from the apparent wrath of the club-wielding attendant.

Preston was left alone and unguarded in the rear seat of the police car while the officers discussed the situation with Martin. After a brief colloquy, the officers asked Preston to leave the car for interrogation concerning the $20 bill. Preston was asked to empty his pockets and display the currency in his possession. Preston complied with this request. The officers then asked if he [Preston] minded if they searched his automobile. He replied "No." [Transcript page 16]. He then unlocked the car and the trunk for the officers' perusal. Nothing was found.

Later that night, officers conducted a search of the back seat of the police car where Preston had been sitting. The officers stated this was normal procedure after some one had occupied a police vehicle. When the back seat was uplifted, the officers found a counterfeit $20 Federal Reserve Note on the left side of the car where Preston had been sitting. This note and the note passed in Michigan City by the defendant bore the same serial number, the same quadrant number, the same plate number and had the same plate defects.[3]

Upon appeal, defendant argues that the search of his person and his automo-

---

2. Transcript, page 75.

3. The defects must have been substantial because of the facility with which both service station attendants realized the counterfeit nature of the notes. At trial,

a Special Agent for the Government testified that he had been in the Secret Service for 30 years and the bills on exhibit "are among the poorest counterfeits I have ever seen."

bile at the Shell Service Station in Indianapolis and the subsequent seizure of the $20 note from the police car, hours later, was unreasonable per se under the Fourth Amendment and it was, therefore, error for the trial court to deny defense counsel's motion to suppress the evidence. Yet the evidence urged suppressed by defendant was the $20 note found in the police car after his confrontation with police.

The District Court made the ruling at the motion to suppress hearing that no search was effected at the Shell Service Station. The record indicates that Preston voluntarily produced his billfold and the currency therein. He was not frisked nor was his person and billfold handled by the police. We feel the evidence indicates there was no search of Preston's person at any time. With respect to defendant's car, the record indicates that the examination of the trunk and contents was effected with the full knowledge, consent and cooperation of the defendant. We are also of the opinion that if such a finding had been pertinent herein, the officers had probable cause to search Preston's automobile. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). We need not further belabor this point because no contraband or fruit of the investigation of Preston's person and automobile was introduced at trial.

In an ancillary argument to his search and seizure discussion, defendant contends that he did not voluntarily abandon the subsequently seized $20 bill found beneath the seat of the police car. Defendant asserts the imminent threatened illegal search by the police officers as the causation of his abandoning the $20 note in the police car does not provide the Government with an exception to the warrant requirement, nor had he relinquished his proprietary interest over the $20 note. For this proposition, defendant relies on Rios v. United States, 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688 (1960); Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Hobson v. United States, 226 F.2d 890 (8 Cir., 1955) and two Indiana cases.[4]

An important distinguishing factor from the cases cited by the defendant is that the $20 Reserve Note here in question, admitted for the limited purpose of establishing knowledge and intent, was not found as a result of a search of Preston's home, automobile or person. Nor can we find a proprietary interest of Preston in the Indiana State Patrol car hours after he occupied the rear seat of such car. Extending defendant's argument to apply to this fact situation would require the police officers to procure a warrant and offer proof of probable cause before searching their own police cars.

Another distinguishing feature between this case and those relied on by defendant is that as the defendant entered the police automobile, and during the period he remained in that car, the police were not searching defendant's property nor even the defendant himself. Indeed, at the time the defendant entered the police car, Officer Johnson was not aware of the existence of the counterfeit note.

We are of the opinion that Preston had divested himself of any possessory interest in the $20 note by leaving it concealed in the police car. Furthermore, we find it difficult to accept the argument that Preston had any proprietary interest in the police car at any time. Preston's dilemma was self-inflicted and a product of his own contriving. He most certainly cannot complain of the search of a property in which he had no interest or standing to raise a Fourth Amendment objection. Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); Wilson v.

4. State v. Smithers, Ind., 269 N.E.2d 874 (1971); Bowles v. State, Ind., 267 N.E.2d 56 (1971).

United States, 218 F.2d 754 (10 Cir., 1955); Lovette v. United States, 230 F.2d 263 (5 Cir., 1956).

Defendant raises objections upon appeal concerning the Government's instructions to the jury. First, defendant argues the Government's Instruction No. 1 prejudicially included part of the statute not charged in the indictment, constituting reversible error. In the indictment for the case at bar, Preston was charged with passing a counterfeit note, whereas the jury instruction included "or keeps in possession." To that part of the specific statute, defendant objects. The trial judge carefully went to great lengths to instruct the jury on the essential elements of the offense excluding possession. The mention of possession was merely part of the preliminary instruction clarifying the origin of the indictment for the jury. We are of the opinion that whatever ambiguity may have been raised by the direct quotation of the pertinent statute was dispelled by the later instructions of the Court.

Second, the defendant relies on Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952) for the proposition that by reading to the jury Government's Instruction No. 4, the Court destroyed the presumption of defendant's innocence and removed from the jury's consideration the issue of requisite intent.

The District Court repeatedly charged the jury with respect to the necessity of proving wilfulness and specific intent, and that such must be proven beyond a reasonable doubt. Because intent must be inferred from conduct by the defendant, "the intent is presumed and inferred from the result of the action." Agnew v. United States, 165 U.S. 36, 17 S.Ct. 235, 41 L.Ed. 624 (1897); see United States v. Green, 246 F.2d 155 (7

Cir., 1957), cert. den. 355 U.S. 871, 78 S.Ct. 122, 2 L.Ed.2d 76 (1957). A similar instruction concerning receipt and concealment of stolen motor vehicles was approved by our Court in United States v. Hood, 422 F.2d 737 (7 Cir., 1970).

We further hold the Government had proven beyond a reasonable doubt that Preston was guilty of passing a counterfeit Federal Reserve Note with intent to defraud as charged. The overwhelming evidence in the case at bar, considering the evidence and record in a light most favorable to the Government, supports the jury verdict of guilty. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

The judgment of the District Court is

Affirmed.

MURRAH, Circuit Judge (concurring specially):

In my opinion the challenge to the search and seizure in this case is purely fanciful—if, indeed, not absurd. Consent to the search of Preston's person and automobile was willingly given. Moreover, nothing was seized. In these circumstances, there was no illegal act and, therefore, no basis for application of the poisonous tree doctrine.

But, even assuming an illegal search there is no rational justification for the poisonous tree doctrine in this case. This is so simply because, in my judgment, it was not an unwarranted "exploitation" for the police to routinely search their own automobile after the defendant had occupied it. To accept the defendant's rationalization of the poisonous tree doctrine would push it beyond the limits of credibility.

The court's instructions to the jury are free from reversible error.