UNITED STATES of America, Appellee,

v.

Jack Allen BARBER, Appellant.

UNITED STATES of America, Appellee,

v.

Troy Leo KELLER, Appellant.

Nos. 76–1776, 76–1859.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 10, 1977.

Decided June 15, 1977.

Alvin L. Floyd, Tulsa, Okl., filed brief for appellant, Jack Allen Barber.

Ellen B. Brantley, Little Rock, Ark., filed brief for appellant, Troy Leo Keller.

W. H. Dillahunty, U. S. Atty., and Fletcher Jackson, Asst. U. S. Atty., Little Rock, Ark., filed brief for appellee.

Before GIBSON, Chief Judge, BRIGHT, Circuit Judge, and HANSON, Chief District Judge.[*]

HANSON, District Judge.

These separate appeals, which we have consolidated for purposes of this opinion, involve Jack Barber's conviction for passing a counterfeit $100.00 Federal Reserve Note, and Troy Keller's conviction for aiding and abetting that transaction. 18 U.S.C. § 2 and § 472 (1970). Appellants' primary contention on appeal is that Keller was arrested without probable cause, and that their convictions must be reversed because certain evidence tainted by that illegal arrest was introduced against them at their trials. We affirm as to Barber, and reverse as to Keller.

The facts surrounding the challenged arrest were developed at a joint suppression hearing and at appellants' trials.[1] At approximately 5:00 p.m. on May 28, 1976 an automobile with two male and female occu-

pants pulled into one of four off-street parking stalls directly in front of Baker's Liquor Store in North Little Rock, Arkansas. The store front being almost entirely glass, the car occupants could easily see into the store, and those in the store could observe the people in the car. Keller was driving the vehicle, which was a tan Oldsmobile; with him in the front seat was Jack Barber. Barber left the car, alone, and entered the liquor store. Keller and the two women remained in the vehicle. After Barber had located his purchase, a half gallon of Canadian whiskey and a pint of vodka, he reached into his wallet and withdrew a one-hundred dollar bill which he presented to the store proprietor, Mr. Baker. The bill immediately raised Mr. Baker's suspicion, for it was "excessively white." Baker took the bill, stated that he had to make change, and retired into a back room of the liquor store, which room also served as his private apartment.

Present in the Baker apartment were a number of his friends. Among them happened to be United States Secret Service Agents Haldeman and Sparks, and Little Rock Police Detective Knestrict. The men were off duty, and apparently had stopped by for a social drink to usher in the Memorial Day weekend. As a Secret Service agent, Mr. Haldeman was specially trained with regard to counterfeit money. He immediately determined the bill to be counterfeit. Upon this determination, Knestrict, Haldeman, Sparks, and Baker entered the sales area of the store, and Detective Knestrict positioned himself near the front door. Barber, apparently sensing trouble, stated that he had either "change" or a "smaller bill" in the car, and started retreating toward the door. At that point, Detective Knestrict identified himself and arrested Barber. Upon being arrested, Barber asked

[*] The Honorable William C. Hanson, Chief Judge, Southern District of Iowa, sitting by designation.

1. Keller and Barber were jointly indicted, along with Nina Barber and Celia Jordan. Appellants were to have been tried together, and were represented by common counsel at a July 28, 1976 suppression hearing. Upon the Court's overruling of the motion to suppress, Keller moved to sever his case from Barber's. This motion was granted, and Barber was tried immediately after the suppression hearing. Keller was tried some two months later. Codefendants Jordan and Nina Barber have not yet been brought to trial.

the detective if he could go out to the car and tell his friends he was being detained. This request was denied, and Barber was escorted into the store's back room by the officers. Once there he was frisked, and left under the armed guard of Mr. Baker. The officers then went directly to the awaiting car, where they arrested Keller and the two women occupants.

Keller was ordered out of the car, and directed to stand near it with his hands on the roof. Within a few minutes a squad car driven by police officer Andrews arrived; Barber and Keller were handcuffed, placed in the back seat of the squad car, and driven to the police station. The two women were driven there in a separate vehicle. While driving Keller and Barber to the station, Officer Andrews noticed in a rear view mirror that Keller appeared to be engaged in certain movements. At one point Andrews was able to turn and look into the back seat; he observed Keller "bringing a white piece of paper from his right side to his left side." After Andrews had taken the suspects into the station he returned to the car and discovered a white folded envelope under the back seat. In it were eleven $100.00 notes similar to the one presented by Barber at the liquor store. The Oldsmobile, which was owned by Celia Jordan, was meanwhile towed to the police station and searched as a vehicle transporting contraband. Numerous bottles of liquor, still in brown paper bags, were discovered in the trunk.

Appellants were indicted, along with Nina Barber and Celia Jordan, in a single three-count indictment. Count I charged all four defendants with passing the $100.00 note in the Baker Liquor Store; Count II charged Keller with possession of the eleven $100.00 notes found in the white envelope; Count III charged Celia Jordan and Jack and Nina Barber with possession of those same eleven notes. Barber's case was submitted to the jury on only one Count I—passing the $100.00 counterfeit note. Keller's case was submitted on both Counts I and II; he was convicted of aiding and abetting in passing the note, but acquitted

of possessing the eleven notes found in the envelope.

We will consider appellants' contentions separately.

## KELLER

Appellant Keller's primary argument is that the District Court erred in refusing to suppress the eleven notes found by Officer Andrews under the seat of the police car. Keller asserts that admission of these notes was improper, in that they were tainted evidence stemming from his unlawful arrest. Resolution of this issue turns upon whether probable cause existed to support Keller's arrest outside the liquor store.

As we have previously recognized, the legality of an arrest must be determined by looking to the state law which governs arrest procedures, and applying those provisions in accordance with the federal constitutional standards. *United States v. Berryhill*, 466 F.2d 621, 624 (8th Cir.), *cert. denied*, 409 U.S. 1046, 93 S.Ct. 547, 34 L.Ed.2d 498 (1972); *United States v. Bazinet*, 462 F.2d 982, 986 (8th Cir.), *cert. denied sub nom. Knox v. United States*, 409 U.S. 1010, 93 S.Ct. 453, 34 L.Ed.2d 303 (1972). Arkansas law authorizes an officer to make a warrantless arrest

> * * * where a public offense is committed in his presence, or where he has reasonable grounds for believing that the person arrested has committed a felony.

Ark.Stat.Ann. § 43–403 (Repl. 1964). The "reasonable grounds" prescribed by the statute are the equivalent of probable cause. *Theriault v. United States*, 401 F.2d 79, 81 (8th Cir. 1968), *cert. denied*, 393 U.S. 1100, 89 S.Ct. 898, 21 L.Ed.2d 792 (1969).

We believe that the legality of Keller's arrest is controlled by *United States v. Di Re*, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948). In that case Reed, a police informant, notified officers that he had arranged to meet with one Buttitta at a certain location, and that Buttitta would be selling him counterfeit gasoline ration coupons. Two officers arrived at the designated location and observed Reed in the back seat of a car; in the front seat were two

individuals—Buttitta and Di Re. Upon approaching the car the officers observed two ration coupons in Reed's hand. All three occupants of the car were then arrested, and a later search of Di Re's person at the station house disclosed some one hundred ration coupons which proved to be counterfeit. Di Re was convicted of possessing these coupons. On appeal to the United States Supreme Court, it was ruled that the officers lacked probable cause to arrest Di Re. The information Reed had conveyed to the officers had not implicated Di Re in any aspect of the illegal transaction; Di Re's "mere presence" in the car seemed to be the sole justification for his arrest. In the words of the Court,

> * * * The argument that one who "accompanies a criminal to a crime rendezvous" cannot be assumed to be a bystander, forceful enough in some circumstances, is farfetched when the meeting is not secretive or in a suspicious hide-out but in broad daylight, in plain sight of passers-by, in a public street of a large city, and where the alleged substantive crime is one which does not necessarily involve any act visibly criminal. If Di Re had witnessed the passing of papers from hand to hand, it would not follow that he knew they were ration coupons, and if he saw that they were ration coupons, it would not follow that he would know them to be counterfeit. Indeed it appeared at the trial to require an expert to establish that fact. Presumptions of guilt are not lightly to be indulged from mere meetings.

332 U.S. at 593, 68 S.Ct. at 228.

■ The facts of this case disclose a similar absence of probable cause for the arrest of Keller. At the time the officers arrested Keller, they knew only that he had driven Barber to the liquor store, and was waiting in the car just outside the store as Barber was apprehended. The officers' presence at the store was fortuitous; they had not been tipped to await Barber's entry. Further, Barber said nothing during his arrest which would implicate the occupants of the car as his confederates in crime. And, as in *Di Re*, there was nothing in Barber's observable conduct which conveyed any overt indication of criminality. The incident occurred during daylight at a store open for regular business. Had Barber been masked or carrying a weapon, a person in Keller's position, who could clearly observe his actions, could be charged with an awareness of their criminal nature. However, Barber simply entered the store, selected his purchase, and produced a bill from his wallet in payment thereof. If anything out of the ordinary was observable to the car's occupants, it was the stalling of the store proprietor and Barber's apprehension by the three off-duty law enforcement officers. The record is clear that Keller and his companions could observe all these developments, but made no attempt to flee, even after Barber was taken into the back room by the officers. The three were still seated in the car when detective Knestrict and agent Haldeman emerged from the store to arrest them.

The government's primary argument in justification of the arrest is that Keller made certain threatening gestures toward agent Haldeman as Keller was standing next to the car with his hands on the roof. This argument must fail for several reasons. First, even if it is assumed that Keller had *not* been arrested prior to being ordered to stand alongside the car, we have grave doubts that the gestures described by agent Haldeman are sufficient to constitute probable cause to arrest Keller for knowingly participating in Barber's enterprise. At most Keller's activities amount to a lack of cooperation concerning certain orders of the agent. Such behavior, by itself, is hardly sufficient to support an arrest for counterfeiting. It was not accompanied by any other acts or statements which would tend to reveal Keller's awareness of any wrongdoing.

More significant, however, is the clear indication in the record that Keller had already been arrested by the time the "threatening" activities occurred. As recognized in *Henry v. United States*, 361 U.S. 98, 103, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959),

probable cause must be assessed "at or before" the time of the actual arrest. In this case, the arrest was complete, and Keller restricted in his "liberty of movement" at the time he was ordered out of the car and told to stand next to it by detective Knestrict. Indeed, the detective stated at the suppression hearing that once Barber was secured in the back of the store, he and agent Haldeman "went outside to the vehicle and arrested all the occupants." [2] By detective Knestrict's own testimony, he arrested Keller on a state charge of forgery upon ordering him out of the car. The detective then left agent Haldeman at the car with the three arrestees. It was at this point that the threatening gestures occurred—after Keller's movements had been significantly restricted. Thus, this is not a case where a permissible "stop and frisk" situation has escalated into probable cause for arrest by virtue of a detainee's suspicious behavior. Cf. United States v. Stevens, 509 F.2d 683 (8th Cir.), cert. denied, 421 U.S. 989, 95 S.Ct. 1993, 44 L.Ed.2d 479 (1975). The officers' purpose in going to the car was admittedly not investigatory; in fact, they asked no questions of the three occupants. Once Barber was secured in the back room of the liquor store, the officers proceeded directly to the car to arrest all three occupants. The fallacy of the government's threatening gesture argument is most aptly demonstrated by the fact that the two women occupants were also arrested, and it has never been asserted that they too caused the agents to feel threatened.

In sum, Keller appears to have been arrested solely because he drove Barber to the liquor store and was sitting outside the store in the car when the counterfeit bill was detected. Keller was thus arrested for his "mere association" with Barber and his "mere presence" in the car. Because Barber's activity involved no discernible indication of its criminal nature, Di Re dictates that probable cause was lacking for Keller's arrest. See also United States v. Chadwick, 532 F.2d 773, 784 (1st Cir. 1976), cert. granted, 429 U.S. 814, 97 S.Ct. 54, 50 L.Ed.2d 74

(1976); United States v. Strickler, 490 F.2d 378, 380 (9th Cir. 1974); United States v. Bazinet, supra at 988–90; United States v. Seay, 432 F.2d 395, 400–01 (5th Cir. 1970), cert. denied sub nom. McGee v. United States, 401 U.S. 942, 91 S.Ct. 949, 28 L.Ed.2d 223 (1971); Pigg v. United States, 337 F.2d 302, 306 (8th Cir. 1964).

It follows from the illegality of Keller's arrest that the eleven notes secreted in the back seat of the police should have been suppressed as fruits thereof. The United States has failed to sustain its burden that the discovery of the notes was untainted under the doctrine of Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). See Brown v. Illinois, 422 U.S. 590, 604–05, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). It must be noted that this is not a "search" in the traditional sense—Keller admits having no privacy interest in the police car in which the notes were discovered. Rather, Keller asserts that their discovery was "a direct result of the unlawful seizure of his person in an unconstitutional arrest." We agree.

Keller's position is directly supported by Fletcher v. Wainwright, 399 F.2d 62 (5th Cir. 1968). In that case, police officers used force to illegally enter a motel room. Their conspicuous entry prompted the occupants to throw certain items of stolen jewelry out of a window; officers discovered these items on the ground below shortly thereafter. Under the circumstances, the court refused to find that the evidence had been voluntarily abandoned, ruling instead that "since the initial entry was improper and the items were thrown out the window as a direct result of that illegality, the police were not entitled to the fruits." Id. at 64. In Lawrence v. Henderson, 478 F.2d 705 (5th Cir. 1973), the Fletcher rationale was applied to a defendant who had secreted narcotics paraphernalia under the back seat of a police car while being transported to the station after an illegal arrest. As the Court noted, " . . . the facts make it clear that the illegal arrest prompted [the defendant] to conceal [the items]. Under

2. Suppression hearing transcript at 32.

such circumstances it cannot be said that [defendant] voluntarily abandoned [them]." *See also United States v. Newman,* 490 F.2d 993, 995 (10th Cir. 1974); *Hobson v. United States,* 226 F.2d 890, 894 (8th Cir. 1955). *Cf. United States v. Kelly,* 551 F.2d 760 at 763–764 (8th Cir. 1977); *United States v. Maryland,* 479 F.2d 566 (5th Cir. 1973).

Under the facts of this case it is clear that the illegal arrest of Keller led directly to his placement of the envelope under the seat of the police car. Because the government failed to show that the evidence was not the fruit of the illegal arrest, it should have been excluded. Further, because the counterfeit notes were clearly prejudicial to Keller's case, his conviction must be reversed and his case remanded for further proceedings consistent with this opinion.

## BARBER

■ The sole issue presented by Barber is that the District Court erred in overruling his motion to suppress the eleven counterfeit notes found in the police car.

As an initial matter, it must be noted that the suppression of the notes as to Keller does not *ipso facto* compel their suppression as to Barber. In *Wong Sun v. United States, supra,* certain narcotics were suppressed as to one James Wah Toy for the reason that their discovery stemmed directly from a violation of Toy's fourth amendment rights. *Id.* 371 U.S. at 487–88, 83 S.Ct. 407. Those same narcotics, however, were ruled admissible against co-defendant Wong Sun. As the Supreme Court stated:

> The exclusion of the narcotics as to Toy was required solely by their tainted relationship to information unlawfully obtained from Toy, and not by any official impropriety connected with their surrender by Yee. The seizure of this heroin invaded no right of privacy or premises which would entitle Wong Sun to object to its use at his trial.

*Id.* at 492, 83 S.Ct. at 419. The instant case is analogous to *Wong Sun.* Of crucial importance is the fact that the actual discovery of the notes, by itself, contravened no fourth amendment right of either Keller or Barber. Appellants have no proprietary or privacy interest in the back seat of Officer Andrews' police vehicle. *United States v. Preston,* 463 F.2d 544, 546 (7th Cir.), *cert. denied,* 409 U.S. 880, 93 S.Ct. 209, 34 L.Ed.2d 135 (1972); *United States v. Maryland, supra,* 479 F.2d at 568. It is the relationship of the discovery of the notes to Keller's illegal arrest which mandates their suppression, not the fact that Officer Andrews did not secure a warrant before "searching" his own police vehicle. Thus, Barber must have standing to assert the illegality of Keller's arrest in order to prevail. Barber has cited no cases which support such a proposition, and we have found none.

Barber instead asserts that he has "automatic standing" to protest the admission of the notes because Count III of the indictment charged him with possession thereof.[3] *See Jones v. United States,* 362 U.S. 257, 263–65, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); *Simmons v. United States,* 390 U.S. 377, 390, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *Brown v. United States* 411 U.S. 223, 227–30, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973); *United States v. Kelly,* 529 F.2d 1365, 1370–71 (8th Cir. 1976); *United States v. Anderson,* 552 F.2d 1296, at 1298–1299 (8th Cir. 1977). Given the facts of this case, we believe that Barber proposes an unwarranted extension of the doctrine of fourth amendment standing.

In those cases cited by Barber in which standing has been afforded to one charged with possessing the item sought to be suppressed, the item itself was directly subject to the police behavior found to violate the fourth amendment. For example, in *Jones v. United States, supra,* officers discovered drugs in the process of carrying out a search pursuant to an allegedly invalid war-

---

**3.** Count III, which charged Barber with possession of the notes, was not submitted to the jury at his trial. When that count was formally dismissed appears to be a matter of controversy. For purposes of this appeal, however, we accept Barber's view that the count was still pending at the time of the suppression hearing on July 28, 1976.

rant. Jones was charged with possession of those drugs, and hence was granted standing to object to the constitutionality of· their discovery. In *United States v. Kelly, supra,* standing was granted Kelly to object to the warrantless seizure of certain magazines which were allegedly obscene. The fourth amendment violation he asserted pertained directly to the seizure of the items which criminally implicated him. By contrast, Barber asserts no fourth amendment infirmity in relation to the actual "search" and seizure of the notes themselves. As in *Wong Sun,* no "official impropriety" was involved in the actual discovery of the envelope in the back seat of the police car. Suppression of the notes as to Keller was solely derivative; it was caused by Keller's illegal arrest. Under these circumstances, Barber's argument for standing runs afoul of settled Supreme Court doctrine: "[T]he established principle is that suppression of the product of a Fourth Amendment violation can be successfully argued only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence." *Alderman v. United States,* 394 U.S. 165, 171–72, 89 S.Ct. 961, 965, 22 L.Ed.2d 176 (1969). "[R]ights assured by the Fourth Amendment are personal rights, and . . . they may be enforced by exclusion of evidence only at the instance of one whose own protection was infringed by the search and seizure." *Simmons v. United States, supra,* 390 U.S. at 389, 88 S.Ct. at 974. The only fourth amendment violation which occurred in this case was the "seizure" of Keller's person, by an arrest, without probable cause. *See United States v. Watson,* 423 U.S. 411, 428, 96 S.Ct. 820, 46 L.Ed.2d 598 (Powell, J., concurring); *Terry v. Ohio,* 392 U.S. 1, 16–20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The arrest of Keller did not infringe upon any constitutional rights of Barber. Accordingly, Barber has no standing to urge the arrest's invalidity in order to suppress its fruits. *See United States v. Galvez,* 465 F.2d 681, 684–86 (10th Cir. 1972); *United States v. Breedlove,* 444 F.2d 422, 424 (5th Cir. 1971).

In summary, we reverse as to Keller, and remand his case for further proceedings consistent with this opinion. The conviction of appellant Barber is affirmed.

GIBSON, Chief Judge, concurring.

I agree with the court's disposition in *United States v. Jack Allen Barber.* And, with some misgivings, I concur in *United States v. Troy Lee Keller* as I am persuaded that *United States v. Di Re,* 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1947) and *United States v. Bazinet,* 462 F.2d 982 (8th Cir.), *cert. denied,* 409 U.S. 1010, 93 S.Ct. 453, 34 L.Ed.2d 303 (1972), are controlling and that Keller's arrest was not supported by probable cause. Accordingly, the evidence derived from the arrest should have been suppressed and, because it was not, Keller is entitled to a new trial. This conclusion is mandated, not by an overly technical reading of the Constitution, but by the rashness and overeagerness of the officers arresting Keller.

When confronted with Barber's obviously illegal passage of a counterfeit bill, the officers could have pursued several courses of action. Keller's connection with Barber was sufficiently close, in my opinion, to justify a reasonable suspicion that Keller may have been involved in the criminal enterprise. Therefore, the officers could have temporarily detained Keller for investigative purposes, *see United States v. Harflinger,* 436 F.2d 928 (8th Cir. 1970), *cert. denied,* 402 U.S. 973, 91 S.Ct. 1660, 29 L.Ed.2d 137 (1971), and, if the investigation developed facts amounting to probable cause, Keller could have then been arrested.

Alternatively, the officers simply could have requested permission to search the automobile. Or, if the questioning of Barber and Keller provided the officers with probable cause to believe that the automobile was being used to transport counterfeit bills, the automobile could have been seized by the federal officers pursuant to 49 U.S.C. § 782 (1970), *see Drummond v. United States,* 350 F.2d 983, 988 (8th Cir. 1965), *cert. denied,* 384 U.S. 944, 86 S.Ct. 1469, 16 L.Ed.2d 542 (1966), and immediately

searched without a warrant, *United States v. LaVecchia*, 513 F.2d 1210 (2d Cir. 1975). A search of the automobile would have disclosed the numerous bottles of liquor in the trunk which, when coupled with other facts known to the officers, would have established probable cause for Keller's arrest.

The officers chose to follow none of these courses of action. Instead, they arrested Keller on a counterfeiting charge merely because he was waiting in the automobile for Barber. This fact, unsupported by other facts evidencing Keller's knowing participation in the criminal scheme, is insufficient to establish probable cause. The trained law enforcement officers, acting on their instincts and suspicions rather than probable cause, must bear the blame for the reversal of Keller's conviction. The law has endowed law enforcement officials with effective means of investigating crimes and apprehending suspected criminals. However, in the investigative process constitutional rights must be respected and any arrest must be based on probable cause. The neglect, however inadvertent, of this principle by the arresting officers in this case can not go unremedied, and defendant Keller is entitled to a new trial.