**UNITED STATES of America, Appellee,**

v.

**Tyrone Jerome KELLY and Melvin Powell, Appellants.**

**Nos. 76–1515, 76–1546.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 13, 1976.

Decided March 14, 1977.

Certiorari Denied June 27, 1977. See 97 S.Ct. 2981.

Kathleen M. Graham, Minneapolis, Minn., for appellant, Kelly.

Thomas M. Kelly, Community Defender, Minneapolis, Minn., for appellant, Powell.

Mel I. Dickstein, Asst. U. S. Atty., Minneapolis, Minn., for appellee; Robert G. Renner, U. S. Atty., Minneapolis, Minn., on brief.

Before HEANEY and ROSS, Circuit Judges, and VAN PELT, Senior District Judge.[*]

ROSS, Circuit Judge.

Tyrone Kelly and Melvin Powell appeal their convictions on a two count indictment charging Kelly, Powell and three others with armed robbery in violation of 18 U.S.C. § 2 and § 2113(a) and (d), and with conspiracy to commit the same armed robbery in violation of 18 U.S.C. § 371 and § 2113(a) and (d). Kelly and Powell were tried jointly with two other defendants by a jury, all of whom were found guilty of both counts.

Both Kelly and Powell appeal several issues to this court. Kelly challenges the admissibility of evidence seized in the search of his apartment building; claims the denial of a fair trial in light of alleged irregularities in the trial proceedings and the failure by the prosecution to permit discovery of necessary material. Powell asserts that the court erred in failing to provide separate trials for the defendants and in admitting, and failing to caution the jury concerning, extrajudicial statements of a codefendant. Powell also asserts error as a result of some of the procedural irregularities alleged by Kelly.

*Facts.*

Six individuals were allegedly involved in the conspiracy and bank robbery: Tyrone Kelly, Melvin Powell, Gary Roberson, Leonard Irons, Andrew McKelvey, and his wife, Shirley McKelvey.

Roberson received immunity in return for his testimony. He testified, in substance, that Kelly initiated a meeting with him to plan the robbery for which Roberson recruited two additional accomplices. Roberson flew to Minneapolis with the accomplices, Powell and Irons, where the robbery took place. On the morning of the robbery, August 26, 1974, Powell, Irons and Roberson drove to the bank in a stolen station wagon. Roberson, armed with a shotgun, gave instructions to the bank personnel and the customers while Powell and Irons collected the money. After the robbery, the three drove to a predetermined spot, abandoned their car and equipment and got into the trunk of a gold Cadillac owned by Andrew McKelvey and driven by Shirley McKelvey. Mrs. McKelvey drove them back to the apartment building at 2727 First Avenue South where they met with Kelly and Andrew McKelvey in Kelly's apartment to count the money. Shortly thereafter, while still in Kelly's apartment, the police arrived at the building and Roberson, Powell, Irons and Kelly were arrested. Shirley and Andrew McKelvey, who were not in Kelly's apartment, were questioned and arrested also.

*The Search of the Apartment Building.*

Defendant Kelly challenges the admission of evidence obtained during the second search of 2727 First Avenue South which occurred in the early evening of April 26, 1976. The first search of the apartment building, and in particular of apartment 304, had taken place that morning, incident

---

* Robert Van Pelt, Senior United States District Judge, District of Nebraska, sitting by designation.

to the arrests of the defendants. Later that day, Lt. Weiss of the Minneapolis Police Department contacted the operator and manager of the apartment building, Robert Kleinman, and, according to Kleinman, "asked if [Kleinman] would accompany [Lt. Weiss] to the building or meet him at the building and accompany him on apparently a routine investigation of the building itself." Kleinman met Lt. Weiss at the building that evening and accompanied Lt. Weiss inside. Though Lt. Weiss did not have a warrant to search apartment 304, Kleinman unlocked the apartment in order to permit Weiss to search the premises. Lt. Weiss claims that after his search of the apartment, he left to return to his car and, on the way, noticed a green plastic bag hidden under the stairwell. It is the contents of this bag, a paper punch bearing Kelly's fingerprints and bank money wrappers, which defendant Kelly sought to suppress on the basis that the evidence seized was a direct consequence of the warrantless, illegal search of the apartment, and, in addition, the evidence was found inside an apartment building equipped with a security system, an area he claims was protected under the fourth amendment from warrantless search and seizure.

First, there is no question that the warrantless search of apartment 304 was illegal. This search occurred approximately eight hours after the arrest and cannot be considered a search incident to arrest; nor did any exigent circumstances exist mandating a warrantless entry, and finally, no consent to search the apartment was procured from any person with a possessory interest in the apartment. However, the questions remain whether, under these circumstances, the discovery of evidence in the hallways is "tainted" by the prior illegal search, and if not so tainted, whether the warrantless search of the common area with the consent of the apartment manager is nevertheless illegal.

Whether police actions have been tainted by prior illegal conduct has been extensively analyzed by the courts in a variety of factual settings. The central issue, however, remains as phrased in *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1962):

Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at *by exploitation of that illegality* or instead by means sufficiently distinguishable to be purged of the primary taint." (Citation omitted.) (Emphasis added.)

■ The critical question is whether the evidence found under the stairwell is the product of "exploitation" of the illegal search of the apartment. We find that it is not. The police obtained no information in the illegal apartment search which "led" to the search of the hallway and their discovery of the green plastic bag. The two searches were linked only by the facts that both searches took place in the same building and the "fruitful" search immediately succeeded the illegal search. Given the characterization of the two searches as discrete, the discovery of the green plastic bag can only be illegal if the police were illegally searching the common areas of the building. Since the apartment manager had a degree of control over the common areas of the apartment house and legally permitted Weiss to be in a position to view the green plastic bag, we conclude this seizure was permissible.

This analysis does not conflict with the development of the "fruit of the poisonous tree" theory nor, more specifically, with case law cited by defendant Kelly. Kelly relies primarily on *Fletcher v. Wainwright,* 399 F.2d 62 (5th Cir. 1968), for the proposition that where the discovery is a direct consequence of some other violation of the defendant's constitutional rights, the contraband must be suppressed. While we do not dispute the holding of *Fletcher,* the facts of that case can be distinguished from the instant case; in *Fletcher* the first illegal entry by the police prompted the defendants to throw the jewelry out a window and escape through the window. A second policeman searching the ground beneath

the escape windows found the jewelry. The discovery of the jewelry stemmed directly from the information obtained by the illegal entry, specifically, that the defendants escaped through a particular window. Similarly, in *United States v. Ceccolini*, 542 F.2d 136, 142 (2d Cir. 1976), the police discovered in the course of an illegal search, indicia of gambling operations and as a direct result of that discovery, questioned a particular witness whose statements the court held were not admissible because of the taint of the prior illegal search.

■ It is not, therefore, a causal link of time or place that taints a later search with the illegality of prior conduct. Rather, the taint results from *information* gained by means of the illegal conduct which leads the police on directly to the evidence in question. In the instant case, nothing was discovered in the search of the apartment which led the police to the discovery of the bag under the staircase.

■ The second question, whether the police were legally present in the hallways of the building, must also be considered. We find that the consent of the apartment manager to the warrantless search of the common areas was sufficient to allow the police to enter and search those common areas of the apartment building. In reaching this result, however, we do not address the broader questions involved in the searches of common areas; we limit our holding here to a search of the common areas pursuant to consent by the landlord.

In *United States v. Heisman*, 503 F.2d 1284, 1288 (8th Cir. 1974), this court described the consent exception as extending to the warrantless search of property over which the third person and another individual have "equal access and control." As clarification of this concept of equal access and control, the court referred to *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1964). There the Court found that the prosecution must show that consent was given by a person who "possessed common authority over or other sufficient relationship to the premises * * * sought to be inspected."

Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property * * * but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*Id.* at 171, n.7, 94 S.Ct. at 993. Though both *Heisman* and *Matlock* concerned fact situations where a cotenant consented to the search of the area, the logic is nevertheless applicable to the facts in this case. The court does not suggest that the landlord's consent to search apartment 304 was valid. Only the consent to search the common areas is in question.

In *United States v. Kellerman*, 431 F.2d 319, 324 (2d Cir.), *cert. denied*, 400 U.S. 957, 91 S.Ct. 356, 27 L.Ed.2d 266 (1970), a landlord's consent to search the basement area of an apartment building was upheld; the basement area was used by all the tenants and under the general control of the landlord. This court, in *United States v. Williams*, 523 F.2d 64 (8th Cir. 1975), upheld the consent of a landlord to searches of the vacant apartments in his building. The only specific limitations in *Williams* on a landlord's ability to consent to searches within his building concerned leased premises.

We hold that under this factual situation, the landlord could validly consent to the search of the common areas of the apartment building, areas over which he had "joint access or control for most purposes." The evidence seized from the hallways of the apartment building is therefore admissible.

*The Statements of the Codefendant.*

Both defendants Kelly and Powell allege that the introduction of Officer Quinn's tes-

timony of statements made by Shirley McKelvey, codefendant, to Officer Quinn violated their right to confrontation since Mrs. McKelvey refused to testify against herself in the trial. They assert that introduction of the statement should have been suppressed and constitutes reversible error.

Officer Quinn spoke with Mrs. McKelvey in the stairway of the apartment building concerning whether she had driven the car that morning. Mrs. McKelvey answered that she had been shopping at the Super Valu store and had purchased some bacon and eggs. In response to further questions by Quinn, Mrs. McKelvey indicated that the food was in her apartment and agreed to show the bacon and eggs to him. When she reached her apartment and checked in the refrigerator, she told Officer Quinn, "We ate them."

Officer Quinn then checked the garbage and found no evidence of any bacon and eggs wrappers. He told Mrs. McKelvey that she was not free to leave the apartment.

 The government contends that these statements were not hearsay since they were not offered to prove the truth of the matter contained therein. The Supreme Court has stated that

the point of the prosecutor's introducing those statements was simply to prove that the statements were made so as to establish a foundation for later showing, through other admissible evidence, that they were false. The rationale of the hearsay rule is inapplicable as well. The primary justification for the exclusion of hearsay is the lack of any opportunity for the adversary to cross-examine the absent declarant whose out-of-court statement is introduced into evidence. Here, since the prosecution was not contending that anything Tomblin or Browning said at the election contest was true, the other defendants had no interest in cross-examining them so as to put their credibility in issue. Cf. *Pointer v. Texas*, 380 U.S. 400 [85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); *Barber v. Page*, 390 U.S. 719 [88 S.Ct. 1318, 20 L.Ed.2d 255] (1968); *Bruton v.*

*United States*, 391 U.S. 123 [88 S.Ct. 1620, 20 L.Ed.2d 476] (1968).

*Anderson v. United States*, 417 U.S. 211, 220, 94 S.Ct. 2253, 2260, 41 L.Ed.2d 20 (1974) (footnotes omitted). Since these statements were introduced for the purpose of proving their falsity with other independent evidence, we agree with the government that the particular statements made by Mrs. McKelvey cannot properly be construed to be hearsay under the rationale of *Anderson v. United States. Id.* Both Kelly and Powell contend that Mrs. McKelvey's statements *are* hearsay and not within the exception to the hearsay rule providing admission of statements made in the course and furtherance of the conspiracy. Their contention, which we reject, is that the conspiracy had ended and the statements were made during the concealment of the crime and hence, are not within the hearsay exception. *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970); *Krulewitch v. United States*, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949). Assuming, arguendo, that the statements were hearsay, these arguments are not persuasive. This court has defined the offense of robbery under 18 U.S.C. § 2113(d) as extending "to a hot pursuit that follows the physical departure from the bank building." *United States v. Pietras*, 501 F.2d 182, 187 (8th Cir. 1974). In *Pietras*, when the police spotted and stopped the defendant's car half an hour after the robbery, the defendant shot at the policeman. The court affirmed the prosecution of this assault as part of the bank robbery under 18 U.S.C. § 2113(d) and not a separate offense. *Accord, United States v. Jarboe*, 513 F.2d 33 (8th Cir. 1975). Shirley McKelvey's statements which were made shortly after her return to her apartment house from the robbery scene were thus admissible as exceptions to the hearsay rule.

Characterizing the statements as exceptions to the hearsay rule, however, does not eliminate the confrontation issue. *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970). This court, in *United States v. Kelley*, 526 F.2d 615, 620 (8th Cir.

1975) construed *Dutton* as requiring a "case by case analysis in determining whether the application of an exception to the hearsay rule complies with the confrontation clause."

In undertaking this analysis, however, it is important to distinguish the present case from *Dutton* and its progeny. *Dutton* involved an extrajudicial statement entered as evidence for its truth. In this case, Mrs. McKelvey's statement was introduced for its falsity and for the inference which Officer Quinn drew from his investigation which discredited her statement. Officer Quinn was available for cross-examination concerning the events which evoked the inference that she was lying. Under this fact situation, the requirements of *Dutton* that the declarant's statement have certain "indicia of reliability" is inappropriate. The analysis must hinge rather on whether the evidence was "crucial or devastating" to the defendant's case.

We find that the statement was not "crucial or devastating" to either defendant's case. Both defendants were implicated by the testimony of one of the coconspirators, Gary Roberson. His testimony, describing in thorough detail both the planning and the robbery, was corroborated in several instances by other evidence. As stated in *United States v. Cole*, 449 F.2d 194, 197 (8th Cir.), *cert. denied*, 405 U.S. 931, 975, 92 S.Ct. 987, 30 L.Ed.2d 806 (1971), "a conviction can rest on even the uncorroborated testimony of an accomplice if that testimony is not otherwise unsubstantial on its face."

This court, however, does not need to rely on uncorroborated testimony in this case. Roberson's statement was corroborated in several instances: Braniff Airlines confirmed that a ticket had been purchased in Minneapolis for Roberson, Powell and Irons on August 24, 1976. The purchaser gave his name as Donald Green but was living at the same address and with the same phone number as Tyrone Kelly. The stolen station wagon was indeed stolen shortly before the robbery and had been seen parked near the apartment building at 2727 First Avenue South a few days prior to the robbery.

The bank employees recounted the events of the robbery in detail consistent with Roberson's story. Although two people who witnessed the switch between cars were unable to identify the actual faces of the men, the driver of the car was described as wearing a long black wig similar to the one worn by Shirley McKelvey when she was arrested. One witness spotted the license plate numbers which correlated with the McKelvey's Cadillac registration.

Since we have held the search of the apartment building to be lawful, the state's case against Kelly is further strengthened by the introduction of the paper punch removed from the bank which bore Kelly's fingerprints, and the bank money wrappers. In light of Roberson's testimony and the corroborating evidence, we find the introduction of Shirley McKelvey's statements to be harmless error in regard to both defendants Powell and Kelly.

*The Remaining Assignments of Error.*

Both defendants raise several other issues as errors, all of which we find without merit.

■ Kelly asserts that the prosecution failed to provide statements of several defendants until the time of trial, the statement of a police officer who was at the scene of the arrests and a statement allegedly favorable to Kelly. In addition, Kelly objects to the failure of the government to provide an interview with Gary Roberson prior to trial. This prosecutorial misconduct, Kelly alleges, constitutes reversible error. In regard to the prosecution's failure to produce the statement of a witness allegedly favorable to Kelly, our review of the record indicates that the statement was inculpatory in regard to Kelly and disclosure of that statement is not required, *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1962). Powell did not raise this issue on appeal. Roberson was available early during the trial. The statements were produced at trial and in reviewing the evidence and the manner and timing in which the statements were produced and Roberson made availa-

ble, we find no abuse of the trial court's discretion. Thus we find these contentions to be without merit.

 Defendant Powell asserts that the failure of the trial judge to sever the trials of the codefendants was an abuse of discretion under Fed.R.Crim.P. 8. Since we find that no prejudice resulted from the admission of the codefendant's statement, and in light of the commonality of proofs involved, we cannot hold that an abuse of discretion existed in refusing to grant the motion. *See United States v. Scott,* 511 F.2d 15, 18 (8th Cir.), *cert. denied,* 421 U.S. 1002, 95 S.Ct. 2403, 44 L.Ed.2d 670 (1975).

Both defendants Powell and Kelly argue that they were denied their rights to a fair and impartial trial in light of the use of a metal detector outside the courtroom. We cannot agree. In light of the circumstances, the security measures were not excessive. *See United States v. Howell,* 514 F.2d 710, 714 (5th Cir. 1975). In any event, the comments of the trial judge were sufficient to allay any prejudices created in the jury.

In addition, both defendants urge that midtrial delays resulting partially from a brief interlocutory appeal prejudiced their defense. The trial court conducted a thorough voir dire of the jury, both in a group and individually, and ascertained that no prejudice existed. We can find no abuse of discretion in the court's decision that no prejudice resulted.

We affirm the convictions of both Kelly and Powell on both counts.

VAN PELT, Senior District Judge, concurs in the result.