**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 13-4378**
_____

UNITED STATES OF AMERICA,

                Plaintiff – Appellee,

      v.

NADER MODANLO, a/k/a Nader Modanlou, a/k/a Nader Modanlu,

                Defendant – Appellant.

_____

**No. 13-4414**
_____

UNITED STATES OF AMERICA,

                Plaintiff – Appellee,

      v.

NADER MODANLO, a/k/a Nader Modanlou, a/k/a Nader Modanlu,

                Defendant – Appellant.

_____

Appeals from the United States District Court for the District of Maryland, at Greenbelt.  Peter J. Messitte, Senior District Judge.  (8:10-cr-00295-PJM-1)

_____

Argued:  May 13, 2014          Decided:  August 7, 2014

_____

Before KING and THACKER, Circuit Judges, and DAVIS, Senior Circuit Judge.

_____

Appeals dismissed by published opinion. Judge King wrote the opinion, in which Judge Thacker and Senior Judge Davis joined.

--------

**ARGUED:** Samuel Everett Dewey, GIBSON, DUNN & CRUTCHER LLP, Washington, D.C., for Appellant. Sujit Raman, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellee. **ON BRIEF:** James P. Wyda, Paresh S. Patel, OFFICE OF THE FEDERAL PUBLIC DEFENDER DISTRICT OF MARYLAND, Greenbelt, Maryland; David P. Burns, GIBSON, DUNN & CRUTCHER LLP, Washington, D.C., for Appellant. Rod J. Rosenstein, United States Attorney, Baltimore, Maryland, David I. Salem, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellee.

--------

KING, Circuit Judge:

We are required to decide whether a criminal defendant can, by less than extraordinary means, divest the district court of jurisdiction in the middle of his trial and command that the ongoing proceedings be suspended. Twenty days after his trial had begun, before the prosecution had finished presenting its evidence, Nader Modanlo filed a notice of appeal of the court's written order denying his motion to dismiss one of the eleven charges against him as barred by collateral estoppel. Sixteen days later, on the eve of jury deliberations, Modanlo filed a second notice of appeal challenging the court's denial of his motion to sever that same charge from the remainder of the trial. As explained herein, because neither notice was effective to confer appellate jurisdiction over the merits of the underlying rulings, we dismiss them both.

I.

A.

Modanlo, a naturalized American citizen, was born in Iran and educated in the United States. By its operative Third Superseding Indictment of February 20, 2013 (the "Indictment"), the grand jury in the District of Maryland accused Modanlo of facilitating the 2005 launch and subsequent maintenance of an Iranian communications satellite by a state-owned Russian

3

conglomerate, in violation of the Iran Trade Embargo. According to the Indictment, the Iranians availed themselves of Modanlo's business contacts with the Russians, as a result of which about $10 million in cash made its way in 2002 from Iran to Modanlo's closely held business entity, New York Satellite Industries, LLC ("NYSI"). The cash hoard was funneled through Prospect Telecom, a Swiss entity established and funded by the Iranians, with straw ownership.

The first ten counts of the eleven-count Indictment charged Modanlo with conspiring to illegally avoid the trade embargo, with three substantive violations thereof, with money laundering in connection with the initial transfer of funds from Prospect Telecom to NYSI, and with five instances of engaging in monetary transactions in excess of $10,000 with criminally derived property. The latter five charges stemmed from retransfers of the laundered funds to numbered accounts at two Russian banks and, on three occasions, to a domestic account in the name of Final Analysis Communications Services ("FACS"), a subsidiary of Final Analysis, Inc. ("FAI").

Modanlo, with Michael Ahan, had formed FAI in Maryland in 1992. In September 2001, FAI's creditors placed it in involuntary Chapter 7 bankruptcy. Ahan later sued Modanlo over the conduct of their joint business affairs and obtained a judgment of $109 million, prompting Modanlo to file for personal

4

Chapter 11 reorganization in July 2005. As is typical in a proceeding under Chapter 11, Modanlo retained possession of the bankruptcy estate and administered it himself. Meanwhile, as part of the Chapter 7 liquidation of FAI, NYSI had purchased the controlling stock in FACS. That stock increased in value after FACS, embroiled in separate litigation in the district court, was the beneficiary of a jury verdict in September 2005 amounting to nearly $160 million.

On October 14, 2005, Prospect Telecom brought a replevin action in Maryland against NYSI, seeking possession of the FACS stock. Therein, it was alleged that NYSI was in default of its $10 million "loan," in consideration of which the FACS stock had been pledged as collateral. NYSI chose not to appear to defend the allegations, and Modanlo thereafter signed its stock certificates over to Prospect Telecom. The stock transfer came to light a few weeks later, during a hearing on Ahan's motion in the bankruptcy proceeding to appoint a trustee for the Chapter 11 estate.[1] That motion was granted, and, upon appointment, the trustee filed a petition to also place NYSI into Chapter 11

---

[1] See 11 U.S.C. § 1104(a) (authorizing the appointment of a trustee "for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor," or where such appointment is "in the interests of creditors, any equity security holders, and other interests of the estate").

reorganization; the Modanlo and NYSI bankruptcies were subsequently consolidated and jointly administered.

As it turned out, the verdict in favor of FACS provided no boon to either NYSI or Prospect Telecom, as the jury's award was reduced post-trial by the district court and then eliminated entirely on appeal, leaving intact an $8 million judgment against FACS on a pair of counterclaims. See Final Analysis Comm'n Servs., Inc. v. Gen. Dynamics Corp., 253 F. App'x 307 (4th Cir. 2007) (unpublished). After the FACS stock proved to be essentially worthless, Modanlo moved to voluntarily dismiss the joint proceedings. The bankruptcy court granted the motion over the objections of the Chapter 11 trustee and the United States Trustee, both of whom complained that Modanlo's tactics had complicated the search for assets and otherwise hindered the efficient administration of the reorganization process.

Modanlo testified several times in connection with the bankruptcy proceedings. On certain of those occasions, Modanlo insisted that he had negotiated an arms-length loan agreement with Prospect Telecom and denied intimate knowledge of that company's formation or operations, denied any awareness of the identity or nationality of its beneficial owners, and denied that he had received the $10 million in payment for his services. Modanlo's denials under oath served as the basis of Count Eleven of the Indictment, which charged him with

obstructing, influencing, or impeding the bankruptcies (the "obstruction charge").

B.

More than eight months prior to the beginning of his criminal trial, on August 14, 2012, Modanlo moved to dismiss the obstruction charge as barred by collateral estoppel.[2] Modanlo updated his motion on November 21, 2012, with additional materials and argument, to which the government responded in kind. The gist of the motion was that the dismissal of the joint bankruptcy proceedings, granted notwithstanding the active opposition of the United States Trustee, constituted a prior adjudication of the obstruction charge disfavoring the prosecution and binding the government's agents. Modanlo asserted that he had thereby been rendered immune from being federally prosecuted for the same conduct, and the United States Attorney was thus precluded from pursuing Count Eleven.

On January 10, 2013, the district court conducted a hearing on the dismissal motion. At the conclusion of the hearing, the court announced from the bench:

_____

[2] A "Redlined Superseding Indictment" was then in effect, and it set forth — in discrete counts denominated Eleven and Twelve — the conduct constituting what would become the unitary obstruction charge. The pertinent conduct was re-alleged and merged into a single Count Eleven in the Second Superseding Indictment filed October 31, 2012, which was the immediate predecessor to the operative Indictment.

7

> All right. The court is going to deny the motion.
> I'm going to file a written opinion. Just go ahead on
> the assumption that the motion is denied. I don't
> know how quickly we'll get the opinion out. This is
> an important issue. It's worth writing about, but
> it's going to take some time. I just wanted to
> declare what my holding is. I've got that view and
> we'll get something filed in the appropriate time.

J.A. 1105.[3] The case progressed through the pretrial stage, but no formal ruling was forthcoming. Nothing had changed in that regard when the jury was sworn and trial began on April 23, 2013.[4] On May 1, 2013, the sixth day of trial, the court at last issued a written opinion and order denying Modanlo's motion to dismiss. See United States v. Modanlo, 493 B.R. 469 (D. Md. 2013). During a break in the trial between days twelve and thirteen, on May 13, 2013, Modanlo filed a notice of appeal (No. 13-4378) from the court's denial order.

The procedural basis for the appeal traced to our decision in United States v. Ruhbayan, in which we agreed that "[t]he denial of a motion to dismiss an indictment on collateral estoppel grounds is an appealable final order." 325 F.3d 197, 201 n.2 (4th Cir. 2003) (alterations and internal quotation

---

[3] Citations herein to "J.A. ___" refer to the contents of the Joint Appendix filed by the parties to this appeal.

[4] At a motions hearing on April 13, 2013, counsel for Modanlo reminded the district court that it had not yet entered an order disposing of the motion, but the court evidently perceived no urgency to formally rule.

marks omitted).  In confirming that the <u>Ruhbayan</u> order was amenable to immediate appeal, we relied on the Supreme Court having arrived at the same conclusion with respect to "order[s] denying [a] pretrial motion to dismiss [the] indictment on grounds of double jeopardy."  <u>Id.</u> (citing <u>Abney v. United States</u>, 431 U.S. 651, 659 (1977)).[5]

The government immediately reacted to the notice of appeal by filing in the district court a motion to certify as frivolous Modanlo's assertion of immunity from prosecution based on collateral estoppel.  Pursuant to the "dual jurisdiction" exception we adopted in <u>United States v. Montgomery</u>, 262 F.3d 233, 240 (4th Cir. 2001), if an <u>Abney</u>-type appeal is certified as frivolous, the criminal trial may proceed while the defendant simultaneously seeks review of his immunity claim.  Modanlo agreed that a circumscribed trial could proceed — indeed, his notice of appeal included a motion to that effect — as to Count One through Count Ten, which he maintained were readily severable from Count Eleven.

---

[5] The Court's <u>Abney</u> decision, in turn, derived from <u>Cohen v. Beneficial Industrial Loan Corp.</u>, 337 U.S. 541, 546 (1949), in which it recognized a "small class" of appealable orders that "finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated."

The maintenance of dual proceedings in accordance with Montgomery manifests a narrow departure from the general rule that "an appeal confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal. A district court does not regain jurisdiction until the issuance of the mandate by the clerk of the court of appeals." 262 F.3d at 239 (internal quotation marks omitted). As Judge Motz acknowledged, the divestiture of jurisdiction in the typical case "is a judge made rule . . . to avoid confusion or waste of time resulting from having the same issues before two courts at the same time." Id. at 239-40 (internal quotation marks omitted).

Just prior to the scheduled resumption of trial, on May 15, 2013, the district court convened a hearing to consider the parties' contentions concerning Modanlo's collateral estoppel argument, the notice of appeal filed from its denial, and the conduct of the proceedings going forward. The court overruled the government's motion under Montgomery to certify the appeal as frivolous, though opining that "it borders on the frivolous quite candidly." J.A. 1159. Notwithstanding its refusal to certify, the court informed the parties that trial would resume as to the entirety of the Indictment, thus denying Modanlo's motion to sever Count Eleven. The court entered a conforming order on May 16, 2013, as to which Modanlo filed another notice

10

of appeal (No. 13-4414) on May 29, 2013. That same day — the twentieth of the trial — the parties also made their closing arguments to the jury, which retired the next morning to decide the case.

The jury deliberated an aggregate of seven days before returning a verdict. On June 10, 2013, the jury found Modanlo guilty of all charges except for Count Two, which alleged that he had violated the Iran Trade Embargo in connection with the formation and administration of Prospect Telecom. The district court entered judgment on the verdict on December 30, 2013, sentencing Modanlo to ninety-six months of imprisonment on his convictions of Counts Three through Eleven, and imposing a concurrent term of sixty months on the Count One conspiracy conviction, in conformance with the statutory maximum for that offense. On January 13, 2014, Modanlo noticed another appeal (No. 14-4044) — his third overall — from the final judgment, but we are called on today to resolve only the two preceding, midtrial appeals.[6]

---

[6] The appeal in No. 14-4044 awaits preparation and filing of the transcript of trial. No briefing order has yet been entered, and no request has been made to place that proceeding in abeyance pending our decision in these appeals.

11

II.

Transcending the merits of the substantive issue that Modanlo presents for our review, i.e., whether the obstruction charge against him should have been dismissed as collaterally estopped from prosecution, is the more insistent procedural question of the district court's authority to continue the trial after the midtrial appeals were taken. Modanlo maintains that the notices of appeal divested the court of jurisdiction to adjudicate his case, such that everything that subsequently occurred there (in particular, his convictions and sentence) was a legal nullity. According to Modanlo, regardless of what we decide concerning Count Eleven, the government should be compelled to retry him on Counts One through Ten.

Modanlo's imagining of the jurisdictional interplay between the federal district and appellate courts during the conduct of a criminal trial gets things exactly backward. Because jeopardy had already attached with the swearing of the jury, the notices of appeal thereafter filed during the pendency of the trial were ineffective to confer appellate jurisdiction. Hence, the district court correctly permitted the trial to continue and culminate in a verdict, and it is Modanlo's premature appeals — not the judgment against him — that are a nullity and must be dismissed. We shall endeavor to explain the good reasons why that must be so.

12

III.

A.

Appellate jurisdiction, in criminal and civil cases alike, is prescribed by statute and, in its most common form, is invoked for appeals taken from "final decisions of the district courts." 28 U.S.C. § 1291. A "final decision," generally speaking, "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Budinich v. Becton Dickinson & Co., 486 U.S. 196, 199 (1988) (citation and internal quotation marks omitted); see Sell v. United States, 539 U.S. 166, 176 (2003) (noting that "the term 'final decision' normally refers to a final judgment, such as a judgment of guilt, that terminates a criminal proceeding"). Although final decisions are most frequently manifested in a merits judgment, they will on occasion be derived from orders collateral to the merits that satisfy the Cohen criteria. See Mohawk Indus., Inc. v. Carpenter, 558 U.S. 100, 103 (2009) (citing Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546 (1949)); see also supra note 5.

Whether by judgment or collateral order, the entry of a final decision in a criminal case triggers the time within which a defendant or the government is required to file the initial notice of appeal; that time is fourteen or thirty days, respectively. See Fed. R. App. P. 4(b)(1). For purposes of

13

Rule 4(b), "[a] judgment or order is entered . . . when it is entered on the criminal docket." Id. 4(b)(6). If the judgment is one of conviction, it must set forth the defendant's sentence as determined by the district court. See Fed. R. Crim. P. 32(k)(1). A notice of appeal filed after the specified period has expired may curtail appellate review, if its tardiness is not waived by the opposing party or otherwise excused. See United States v. Urutyan, 564 F.3d 679, 684-86 (4th Cir. 2009).

At the other end of the timeline, an appeal of a final decision in a criminal case is not immediately effective if taken too early, i.e., attempted after the district court's ruling is conveyed but not yet docketed. See Fed. R. App. P. 4(b)(2) (providing that "[a] notice of appeal filed after the court announces a decision, sentence, or order — but before the entry of the judgment or order — is treated as filed on the date of and after the entry"). If the final decision embraces multiple rulings, the premature notice takes effect upon entry of the judgment or of the order disposing of the last qualifying post-verdict motion, whichever occurs later. See id. 4(b)(3).[7]

---

[7] A qualifying post-verdict motion is a timely one made pursuant to the Federal Rules of Criminal Procedure "for judgment of acquittal under Rule 29," or "for a new trial under Rule 33," or "for arrest of judgment under Rule 34." Fed. R. App. P. 4(b)(3)(A).

14

For most purposes, including those relevant to the matter at bar, a criminal defendant is put in jeopardy and trial begins "'when a jury is empaneled and sworn' or, in a nonjury trial, 'when the court begins to hear evidence.'" DeLoach v. Lorillard Tobacco Co., 391 F.3d 551, 562 (4th Cir. 2004) (quoting Serfass v. United States, 420 U.S. 377, 388 (1975)). The provisions of Rules 4(b)(2) and 4(b)(3) make clear that once a criminal trial has begun, all stages are to be completed before an appeal can be taken of any final decision incorporated within or accompanying the judgment.

The same holds true of a final decision manifested in a collateral order. If such an order is not appealed prior to the commencement of trial, then appeal must wait until the prescribed time thereafter. If notices of appeal are nonetheless filed during trial prior to the entry of judgment, as Modanlo's were, we have no choice but to dismiss them, as they are not of a type qualifying for deferred consideration under Rule 4(b)(3). Such an approach is entirely consistent with that statutorily prescribed for certain interlocutory criminal appeals by the government:

> An appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information.

18 U.S.C. § 3731 (emphasis added).[8]

Were the accepted practice otherwise, we would expect to discover a host of instances in which a federal appellate court has acknowledged jurisdiction conferred by a midtrial notice of appeal. That is hardly the situation. To the contrary, few and far between are the reported cases in which a criminal defendant has even attempted to file a non-deferrable notice of appeal after trial has begun, indicating to us an implicit understanding that such an appeal is not permitted. The time and effort expended in resolving most appeals is significant, and a trial thus interrupted would almost always be brought to a precipitous and premature end, often in the absence of reversible error. When the time came to pick up the pieces for retrial, all of the resources invested in the prior proceeding by the district court, the jury, and the parties would have been for naught. Cf. Gov't of the V.I. v. Blake, 118 F.3d 972, 974 (3d Cir. 1997) (recounting territorial trial court's view that

---

[8] In United States v. Shears, we clarified that the above-emphasized clause refers to "a decision or order of a district court . . . not made," rather than "[a]n appeal by the United States . . . not made." 762 F.2d 397, 400 (4th Cir. 1985). We therefore gave effect to the government's appeal noticed after jeopardy had attached, but in recognition of the unusual circumstances that a mistrial had been declared soon thereafter and the appeal was relevant to the proposed retrial, which was yet to occur.

16

statutory appeal taken after commencement of criminal trial proceedings necessitated mistrial, rather than adjournment, because the "appeal would last too long to keep the same jury").[9]

Though not a criminal prosecution, the procedural posture of Stevens v. Tillman no doubt motivated the court of appeals to consider similar inherent inefficiencies, causing it to summarily dismiss as premature the plaintiff's notice of appeal filed at the conclusion of her case-in-chief. See 855 F.2d 394, 397 (7th Cir. 1988). Fortunately for the plaintiff, she had also taken a subsequent appeal from the final judgment, which permitted the appellate court to address the merits of her arguments. See id.; accord United States v. Pharis, 298 F.3d 228 (3d Cir. 2002) (en banc) (dismissing government's § 3731 appeal filed after jury sworn); United States v. Aliotta, 199 F.3d 78 (2d Cir. 1999) (dismissing defendant's Abney appeal taken following guilty plea, but prior to sentencing and entry of judgment).

In attempted counterpoint, Modanlo has urged our attention to a number of decisions in which proceedings in the district

---

[9] With respect to the enactment whose invocation gave rise to the mistrial, the Third Circuit related the district court's comments that it harbored "serious[] questions" as to "whether a statute allowing the Government such an appeal during a criminal trial after jeopardy attached can withstand constitutional analysis." Blake, 118 F.3d at 974.

court were stayed or later nullified as the result of a notice of appeal. The referenced authorities, however, stand primarily for the unremarkable proposition that a trial may not be conducted from the time that an interlocutory or collateral order appeal is properly taken until the court of appeals returns jurisdiction to the district court.

The salient phrase in the preceding sentence is, of course, "properly taken." With a lone exception from the D.C. Circuit that we discuss more fully below, the notice of appeal was filed prior to trial. See United States v. Brooks, 145 F.3d 446, 457 (1st Cir. 1998) (declaring that the district judge "retain[ed] no power to swear a jury and begin the trial" upon government's pretrial filing of § 3731 appeal); United States v. Mavrokordatos, 933 F.2d 843, 846 (10th Cir. 1991) (ruling that § 3731 appeal filed at 1:51 p.m. divested trial court of jurisdiction as jury was not sworn until approximately 4:10 p.m.); Stewart v. Donges, 915 F.2d 572, 574-79 (10th Cir. 1990) (concluding that pretrial appeal of denial of qualified immunity rendered trial nullity absent certification that appeal was frivolous).

Perhaps most notably, in Apostol v. Gallion, 870 F.2d 1335 (7th Cir. 1989), the same court (acting through the same authoring judge) that, the year before, had dismissed the midtrial appeal in Stevens, stayed the onset of two civil rights

18

trials so that it could decide pending appeals taken by the defendants from orders denying them qualified immunity. In the absence of a certification of frivolousness by the district court that would permit it to proceed under the dual jurisdiction rule, the Seventh Circuit determined that the best course was for such appeals to "wind up before trials start." Apostol, 870 F.2d at 1340.

We have identified potential outliers sprinkled amongst the glut of supplemental materials filed by the parties leading up to oral argument and since, but those isolated cases can be harmonized with the approach we illuminate today. To begin with, our own decision in Gilliam v. Foster, 61 F.3d 1070 (4th Cir. 1995) (en banc) is not to the contrary. In Gilliam, we enjoined an ongoing state criminal trial on the basis of an Abney double jeopardy claim, but the case arrived on our doorstep prior to the commencement of trial, after the district court denied a stay pending resolution of the defendants' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In any event, because our consideration of the underlying dispute was triggered by motion under Rule 8 of the Federal Rules of Appellate Procedure and not by a final-decision notice of appeal filed in accordance with 28 U.S.C. § 1291, Gilliam is largely inapposite here.

19

More difficult to reconcile is <u>United States v. Coughlin</u>, 610 F.3d 89 (D.C. Cir. 2010). In that case, the court of appeals accepted jurisdiction over appeals filed in the midst of the defendant's retrial on charges as to which a previous jury could not reach a verdict. The defendant maintained prior to retrial that acquittal of other charges brought in the first proceeding collaterally estopped the government from prosecuting him again. Ten days after the retrial had begun, however, the Supreme Court decided <u>Yeager v. United States</u>, 557 U.S. 110 (2009), which overruled controlling circuit law and lent additional substance to the defendant's collateral estoppel claim. The district court denied the defendant's renewed motion, and he promptly filed two appeals.

Although jurisdiction over the dispute may have technically vested through the notices of appeal, the court of appeals in <u>Coughlin</u> appears to have perceived the matter as being more in the nature of a petition for extraordinary relief. <u>Cf.</u> <u>Ukiah Adventist Hosp. v. FTC</u>, 981 F.2d 543, 548 n.6 (D.C. Cir. 1992) (treating notice of appeal, at appellant's request, as petition for writ of mandamus). The court even appointed a "special panel" to evaluate and rule upon the defendant's request to stay the retrial pending appeal, acknowledging "the unusual circumstances presented by <u>Yeager</u>'s mid-trial reversal of

20

Circuit precedent." Coughlin, 610 F.3d at 96 (internal quotation marks omitted).

In light of the odd context in which Coughlin arose, we are reluctant to regard that decision as fully considered contrary authority. We therefore discern no significant impediment to our recognition of the rule that notices of appeal filed in a criminal trial after jeopardy has attached, but before the jury's verdict or the district court's findings has been delivered, are ineffective and must be dismissed.[10]

## B.

These midtrial appeals of the district court's collateral estoppel ruling should never have been an option. Modanlo's motion was made and the hearing thereon occurred long before trial. Though announcing at the hearing that it intended to deny the motion, the court was bound to memorialize the ruling before swearing the jury. The Federal Rules of Criminal Procedure stipulate in no uncertain terms that "[t]he court must

---

[10] In so ruling, we are constrained to mention United States v. Kelly, 551 F.2d 760 (8th Cir. 1977). The opinion in that case fleetingly refers to "midtrial delays resulting partially from a brief interlocutory appeal" that, the defendants alleged, harmed their defense. Id. at 767. The Eighth Circuit did not elaborate, although it seems that whatever appeal may have been filed was at the government's instance. Given that Kelly was decided almost forty years ago, before the age of electronic dockets, we cannot readily discern the details of the appeal, and in particular whether the merits thereof were substantively considered.

decide every pretrial motion before trial unless it finds good cause to defer a ruling. The court must not defer ruling on a pretrial motion if the deferral will adversely affect a party's right to appeal." Fed. R. Crim. P. 12(d).

The rule requires the district court to enter a definitive ruling far enough in advance of trial to permit a defendant or the government to file any appeal of right and, if necessary, to seek a stay. When trial is sufficiently imminent that it may be said the court has arbitrarily allowed the appellate window to effectively close, the proper remedy for a party so aggrieved is to petition in the court of appeals for mandamus relief. See United States v. Moussaoui, 333 F.3d 509, 513 n.5 (4th Cir. 2003) ("Mandamus is an appropriate remedy when a district court arbitrarily refuses to rule on a motion."); see also Sleeth v. Dairy Prods. Co. of Uniontown, 228 F.2d 165, 167 (4th Cir. 1955) ("Mandamus will lie where there is a clear legal right to the performance of a particular act or duty at the hands of the respondent.").

It is obvious, of course, that the "clear legal right" to a pretrial ruling dissipates and becomes academic after trial has begun. Left without a basis for extraordinary relief once the jury was sworn, and without resort to appeal until entry of judgment, Modanlo will have to wait until his final-judgment appeal to press his contentions concerning the district court's

22

collateral estoppel ruling, together with any other issues he may legitimately raise.

IV.

Pursuant to the foregoing, we direct that Modanlo's appeals be dismissed.

No. 13-4378 <u>DISMISSED</u>
No. 13-4414 <u>DISMISSED</u>

23